**James C. PIGG, Appellant,**

**v.**

**Wayne K. PATTERSON, Warden, Colorado State Penitentiary, and Charles Meredith, Superintendent, Colorado State Hospital, Pueblo, Appellees.**

**No. 8869.**

United States Court of Appeals
Tenth Circuit.

Dec. 16, 1966.

Larry D. Hartzog, of Mosteller, Andrews & Mosburg, Oklahoma City, Okl., for appellant.

James W. Creamer, Asst. Atty. Gen., Denver, Colo. (Duke W. Dunbar, Atty. Gen., Frank E. Hickey, Deputy Atty. Gen., and Robert C. Miller, Asst. Atty. Gen., Denver, Colo., on the brief), for appellees.

Before PICKETT, LEWIS and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

In 1959, appellant Pigg was tried in the District Court for Denver County, Colorado, on a charge of murder and found by a jury to be not guilty by reason of insanity. Thereupon, pursuant to Colorado statute, Pigg was committed to the Colorado State Hospital at Pueblo. Shortly thereafter, the Superintendent of the State Hospital reported to the Governor that Pigg was so dangerous that he could not be safely confined in that institution. By executive order Pigg was transferred to the Colorado State Penitentiary at Canyon City, where he has since been confined. Claiming res-

toration to sanity, Pigg has repeatedly and unsuccessfully attempted to obtain his release by resort to mandamus and habeas corpus actions in the state courts. See, Pigg v. Tinsley, Colo., 405 P.2d 687. He now appeals from an order of the United States District Court for the District of Colorado dismissing his petition for a writ of habeas corpus.

■ Pigg asserts that his transfer to and subsequent confinement in the state penitentiary under C.R.S.1963, § 71–2–4(3),[1] constitutes a deprivation of liberty without due process of law. We are unable to agree. In Wells, v. Gilig v. Attorney General of the United States, 10 Cir., 201 F.2d 556, 559, we said:

"The several states in their character as parens patriae have general power and are under the general duty of caring for insane persons. The prerogative is a segment of police power. In the exercise of such power, insane persons may be restrained and confined both for the welfare of themselves and for the protection of the public. And if the exactions of due process are met, such restraint and confinement do not violate any constitutional right of the individual." (Citations omitted)

As in a federal or state penal system, the disposition of those adjudicated criminally irresponsible is a matter of administrative determination which the federal courts should not undertake to supervise. Compare, Cannon v. Willingham, 10 Cir., 358 F.2d 719; Stillwell v. Looney, 10 Cir., 207 F.2d 359; Garcia v. Steele, 8 Cir., 193 F.2d 276; Francis v. Lyman, 1 Cir., 216 F.2d 583; United States ex rel. Gapinski v. Ragen, 7 Cir., 152 F.2d 268. See, also, 14 Am.Jur. Criminal Law § 56. Sound and practical reasons readily occur in support of the state's designation of the penitentiary as the appropriate place of confinement for those criminally insane who demon-

---

1. Colorado Revised Statutes, 1963, § 71–2–4(3) provides:

"The governor is further empowered, with the approval of the public institutional advisory board, when it is reported to him by the superintendent of the Colo-

rado state hospital that any mentally ill person is so dangerous that he cannot be safely confined in said Colorado state hospital, to order said mentally ill person transferred to the Colorado state penitentiary for safekeeping."

strate dangerous or violent tendencies. Furthermore, we are not aware that one who has been adjudicated in a court of law to be criminally irresponsible, and duly committed thereupon, has a vested right to any particular place of institutionalization. Accordingly, we perceive no valid constitutional objection to Pigg's transfer to and confinement in the state penitentiary. In Ex Parte Brown, 39 Wash. 160, 81 P. 552, 553, 1 L.R.A.,N.S., 540, the State Supreme Court spoke on this issue as follows:

"May the state, in the exercise of its sovereignty and in its endeavor to protect its people from dangerous insane characters, provide for their confinement in a prison? It is the policy of the state to confine such persons, but it is ordinarily done in an asylum, and not in a prison, so called. We know of no reason, however, why the state may not classify insane persons, and require that those whose dangerous tendencies have been manifested by the perpetration of acts imperiling the safety of the community shall, after a full hearing establishing the fact of insanity, be confined in prison while that condition continues. While confinement of any character may in a sense contain elements of cruelty, yet the safety of the people requires that such persons shall be confined."

Pigg further asserts that he is confined in the state penitentiary without an adequate and effective remedy available to obtain a judicial determination of his claimed restoration to sanity. Pigg's remedy to obtain a judicial determination of his present mental condition is under C.R.S.1963, § 39–8–4, which provides that the Superintendent of the State Hospital must first certify to the committing court that the defendant is sane. Pigg has attempted to obtain this certification by habeas corpus and mandamus, but the courts have held these to be inappropriate forms of relief. It appears that Pigg is still entitled to attack the Superintendent's good faith and discretion in failing to initiate the statutory proceedings by resort to the procedures outlined in Parker v. People, 108 Colo. 362, 117 P.2d 316, or in Rule 106 (a) (4), Colorado Rules of Civil Procedure. Therefore, Pigg has not exhausted his state remedies, and his habeas corpus petition in the United States District Court was properly denied.

Affirmed.