(No. 43353.—

THE PEOPLE *ex rel.* DAN WILLIS, Appellant, v. THE DEPARTMENT OF CORRECTIONS, Appellee.

*Opinion filed April 17, 1972.—Rehearing denied May 25, 1972.*

WARD, J., took no part.

GERALD W. GETTY, Public Defender, of Chicago (JAMES N. GRAMENOS, Assistant Public Defender, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield (JAMES B. ZAGEL and JAMES R. STREICKER, Assistant Attorneys General, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The petitioner, Dan Willis, filed a *pro se* petition in the circuit court of Cook County which he labeled a

petition for writ of *habeas corpus*. A motion to dismiss the petition was granted without a hearing, and the petitioner has appealed directly to this court.

On December 28, 1966, the petitioner pleaded guilty to the charge of voluntary manslaughter and was sentenced to the Illinois State Penitentiary for a term of not less than 10 nor more than 15 years. In January of 1967, he was sent to the diagnostic depot of the penitentiary for classification and assignment. A psychiatrist examined him, found him in need of mental treatment, and he was then assigned to the psychiatric division at Menard where a staff psychiatrist concurred in the finding. He has remained in the psychiatric division since that time. In his petition he states that he has received no treatment since his transfer to the psychiatric division, and that he is being unlawfully confined in a mental institution.

He contends that his confinement at Menard is tantamount to being detained "in a mental institution" and constitutes cruel and unusual punishment in violation of the eighth amendment to the Federal constitution and a deprivation of liberty without due process. He also contends that he was afforded inadequate assistance of counsel with regard to the *habeas corpus* proceeding. The State's contentions are that the transfer of an inmate to the psychiatric division of the Illinois State Penitentiary is an administrative determination and may be done without a full hearing, and that *habeas corpus* is not an appropriate proceeding for the review of such an action.

The Illinois State Penitentiary Act modernized and streamlined the penitentiary system and consolidated all institutions for the incarceration of convicts under the administration of the Department of Corrections, subject to certain exceptions which are not pertinent here. The institution previously known as the Illinois Asylum for Insane Criminals became known as the psychiatric division. (Ill.Rev.Stat. 1969, ch. 108, par. 106.) Diagnostic Depots were established under section 5 of the Act. (Ill.Rev.Stat.

1969, ch. 108, par. 109.) At such depots, the prisoner is examined to determine the appropriate division of the penitentiary system to which he should be confined, including the psychiatric division. The prisoner is to be held at the assigned division "until discharged according to law, or until assigned by the Department to some other division of the system."

Section 6 of the Act (Ill.Rev.Stat. 1969, ch. 108, par. 110), subject to the other provisions of the Act, gives to the Department of Corrections "full power to transfer prisoners from one division to another as often as the nature of the individual case or the exigencies of administration may require."

Section 7 of the Act (Ill.Rev.Stat. 1969, ch. 108, par. 111) relates to the psychiatric division, and includes among those to be confined therein: "(b) Every male convict who upon examination, diagnosis and classification is found by the Department of Corrections to be suffering from a mental, intellectual, emotional, character, or personality disorder, if in the opinion of the Department the convict would benefit from confinement in the Psychiatric Division. Whenever in the opinion of the Department any inmate confined in the Psychiatric Division no longer requires confinement in such division, and would benefit from assignment to another division, the Department may transfer such inmate to any other division of the penitentiary." This section gives to the Department of Corrections the power to determine confinement within the psychiatric division and the power to determine whether or not there should be a transfer from this division. There is no provision for a hearing or procedure to compel an examination to determine whether the inmate may be transferred from the division.

Section 8 of the Act (Ill.Rev.Stat. 1969, ch. 108, par. 112) provides that the Department, as a part of its supervision of the inmates, "shall cause inquiry and examination to be made at suitable intervals" to determine

whether any convict originally assigned to a division other than the psychiatric division, who is suffering from a disorder specified in paragraph (b) of section 7 or has become a sexually dangerous person, would benefit from confinement in the psychiatric division. If there is such a finding, the convict is to be transferred to the psychiatric division for custody and treatment.

The State points out that the Department of Corrections is charged with the care of the prisoners and the determination of whether any prisoner is suffering from "mental, intellectual, emotional, character, or personality disorder," such that he should be confined within the psychiatric division, is an administrative decision that must be made by the Department without cumbersome time-and-expense-consuming procedures. There is obvious common sense support for this conclusion. There also is legal precedent. See: *Pigg v. Patterson (10th cir. 1966), 370 F.2d 101,* and *United States ex rel. Gapinski v. Ragen (7th cir. 1945), 152 F.2d 268.*

The Illinois statutes suggest varying procedures in connection with the transfer of an inmate within the penitentiary system. Section 7 of the Illinois State Penitentiary Act provides that an inmate may be transferred within the penitentiary system to a psychiatric division without a hearing. Section 8.01 *et seq.* of the Act (Ill.Rev.Stat. 1969, ch. 108, par. 112.01 *et seq.*) permit the transfer of an inmate from the penitentiary system to the custody of the Department of Mental Health. If the prisoner does not object, he may be so transferred, without a hearing, for a period of not more than six months. If he objects, or if the treatment will require transfer of more than six months, a full hearing in the circuit court is required in conformity with the provisions of the Mental Health Code of 1967.

The petitioner here was admittedly found to be in need of mental treatment. He was classified "Group I: In Need of Mental Treatment, Schizophrenic Reaction,

Paranoid Type, Chronic." Yet, the allegations of his petition, which must be taken as true, are that he received no treatment since the date of his transfer—January, 1967.

Since this case was taken under advisement, the United States Supreme Court issued its opinion in *Haines v. Kerner (1972), U.S. , 30 L.Ed.2d 652, 92 S.Ct. 594.* Haines, an inmate of the Illinois State Penitentiary, sued State officials in the United States District Court seeking damages for the deprivation of his civil rights based upon a denial of due process in steps leading to his solitary confinement. The District Court dismissed the complaint for failure to state a cause of action and the Court of Appeals, Seventh Circuit, affirmed. On *certiorari,* the Supreme Court, by unanimous opinion, reversed the lower courts. At pages 653 and 654 (L.Ed.), the court stated:

"The District Court granted respondents' motion under Rule 12 (b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief could be granted, suggesting that only under exceptional circumstances should courts inquire into the internal operations of state penitentiaries and concluding that petitioner had failed to show a deprivation of federally protected rights. The Court of Appeals affirmed, emphasizing that prison officials are vested with 'wide discretion' in disciplinary matters. We granted certiorari and appointed counsel to represent petitioner. The only issue now before us is petitioner's contention that the District Court erred in dismissing his pro se complaint without allowing him to present evidence on his claims.

"Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer

supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 45-46 (1957), 2 L.Ed.2d 80, 84, 78 S.Ct. 99. See Dioguardi v. Durning, 139 F.2d 774 (CA2 1944)."

Likewise, since this case was taken under advisement, the Department of Corrections of the State of Illinois has adopted new Administrative Regulations. Section 801 thereof outlines the Reception and Diagnostic Center Functions and provides for the assignment of inmates to a regular Adult Division institution, facility, or program within 30 days after his or her admission by the Administrator of the Office of Program Services. Section 819 provides for Institutional Transfers, permits any inmate to request an institutional transfer, and empowers the institutional staff to recommend such transfer at any time. The section, however, makes no provision for a review of the decision of the Administrator of the Office of Program Services upon a denial of the request.

The procedural due process within the prison system has been the subject of litigation in many cases in the wake of the existing prison reform movements. In *Hannah v. Larche (1960), 363 U.S. 420, 442, 4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502,* the court, in considering due process, stated:

" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which

have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account."

Also see: *Sostre v. McGinnis (2d cir. 1971), 442 F.2d 178, cert. denied; Matthews v. Hardy (D.C.cir. 1969), 420 F.2d 607; Carothers v. Follette (S.D.N.Y. 1970), 314 F.Supp. 1014; Kritsky v. McGinnis (N.D.N.Y. 1970), 313 F.Supp. 1247; Sostre v. Rockefeller (S.D.N.Y. 1970), 312 F.Supp. 863; Nolan v. Scafati (D.Mass. 1969), 306 F.Supp. 1; Bundy v. Cannon (D.Md. 1971), 328 F.Supp. 165.*

In view of the new Administrative Regulations which have been adopted by the Department, we believe that the appropriate procedure is to withhold judicial action pending an opportunity for petitioner to make a request for transfer pursuant to section 819 thereof, and for the expeditious consideration of that request by Department officials. The comprehensive administrative program which has been undertaken by the Department must have a reasonable opportunity to evolve procedures which will meet the needs of the prison system and the requirements of due process of law. Some provision for adequate internal review of the denial of a request for transfer must be made available.

For the reasons stated, we affirm the order of the trial court dismissing the petition.

*Order affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.