Harry A. McINTOSH, Petitioner,

v.

Edward R. HAYNES, Director, Missouri Division of Corrections, Respondent.

No. 59477.

Supreme Court of Missouri, en banc.

Jan. 17, 1977.

Ronald R. McMillin, Jefferson City, for petitioner.

John C. Danforth, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Harry A. McIntosh, a prisoner, filed an original petition for writ of habeas corpus in this court naming the director of the Missouri division of corrections, Edward R. Haynes, as respondent. In his original peti-

tion, the petitioner alleged that certain conditions of his confinement in the Missouri state penitentiary constituted cruel and unusual punishment in violation of the constitutions of the United States and the state of Missouri from which he seeks relief.

The writ was issued and the respondent filed his return asserting that the petitioner was lawfully in custody "under the authority of a judgment and sentence entered in the Circuit Court of Greene County, Missouri, No. 70035–1, entered September 17, 1974, and ordering petitioner to serve a term of six years in the custody of the Missouri Division of Corrections." The respondent then requested this court to dismiss the writ of habeas corpus and remand the petitioner back into custody of the division of corrections.

The petitioner filed an answer in which he admitted being held in custody of the Missouri department of corrections pursuant to the authority and judgment entered in the circuit court of Greene county. Petitioner claims, however, that his particular confinement in a particular place within the penitentiary, because of conditions that exist there, constitutes cruel and unusual punishment in violation of the state and federal constitutions. Specifically, the petitioner claims the condition that renders this confinement unlawful is that the building in which he is required to sleep is rat-infested and while he was so confined he was bitten by a rat. He also claims other prisoners confined in the same place have been bitten by rats. Although the prayer of his petition for the writ utilizes the classical language whereby he seeks discharge from his confinement, it is clear from his response to the return and the stipulation of facts that petitioner does not seek discharge from the department of corrections but only from being confined in a place infested with rats.

The case was submitted to the court on the following stipulated facts:

"1. Petitioner is in the custody of the Missouri Department of Corrections as a result of a six-year sentence imposed by the Circuit Court of Greene County, Missouri, in the cause styled *State of Missouri v. Harry Arthur McIntosh*, No. 70035–1. Said judgment and sentence were entered on September 17, 1974, pursuant to a plea of guilty to a charge of robbery in the first degree.

"2. Petitioner currently is housed in the Missouri State Penitentiary, Jefferson City, more particularly in a building formerly used as a clothing warehouse, which now has been converted into an honor dormitory. The dormitory is known as housing unit No. 9.

"3. Respondent is and was at all relevant times the Director of the Missouri Division of Corrections.

"4. Petitioner would testify that on January 2, 1976, at about 4:30 a. m., he was bitten by a rat while in bed in housing unit No. 9, which incident was reported to the guard. Petitioner was then taken to the prison hospital where he began anti-rabies treatment, consisting of a fourteen-shot series of anti-rabies vaccine. Petitioner would testify that this treatment was painful.

"5. Two other inmates in housing unit No. 9 had previously reported being bitten by rats and undergone anti-rabies treatment, the first on December 15, 1975, and the second on December 18, 1975.

"6. Donald Wyrick, Warden, Missouri State Penitentiary for Men, would testify that shortly after petitioner reported being bitten he contracted with Rose Exterminator Company, Jefferson City, Missouri, for its extermination service on a once-a-month basis. He further would testify that he has received no further reports concerning the presence of rats since the company had been employed and that no other action is contemplated.

"7. Petitioner would testify that three other inmates in housing unit No. 9 had told him that they had seen rats in housing unit No. 9 after the institution of the above-described vermin-control methods.

"8. The same issues presented in this petition were previously raised in the Circuit Court of Cole County (Case No. 28260)

and the Missouri Court of Appeals-Kansas City Division (Case No. 28529). Both petitions were dismissed without a hearing on the merits."

The principal legal issue is: Assuming the conditions of confinement as alleged constitute cruel and unusual punishment, is habeas corpus a proper remedy to challenge those conditions and obtain relief short of discharge from the penitentiary.

The factual issue is: Assuming habeas corpus to be the proper remedy, do the facts of the instant case establish that petitioner is being subjected to cruel and unusual punishment.

The respondent's basic contention is that habeas corpus is not the proper remedy to challenge the conditions of one's confinement but instead is limited to challenging the cause of confinement. Stated in other words, habeas corpus is intended to inquire into the legality of the authority under which the petitioner is confined. Furthermore, the only remedy available is release from that confinement either by discharge or bail. Respondent argues that since the petitioner admits he is incarcerated pursuant to a valid judgment of the circuit court of Greene county, Missouri, and cannot be discharged from his confinement habeas corpus is not the proper remedy.

Traditionally, the courts in Missouri have refused to examine the conditions of one's confinement by way of habeas corpus. See *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), wherein the Supreme Court of the United States said the practice of Missouri courts was to dismiss petitions for writs of habeas corpus which challenge conditions of confinement because they fail to state causes of action. We are now of the opinion that it is appropriate to reexamine this reputed practice in light of a trend to expand the use of the habeas corpus remedy.

It is important to point out that there is no limitation contained in the Missouri habeas corpus statute which would prevent a court from taking cognizance of habeas corpus proceedings which seek to challenge the conditions of confinement. All such limitations have been products of judicial constraint. Section 532.010, RSMo 1969,[1] provides:

> "Every person committed, detained, confined or restrained of his liberty, within this state, for any criminal or supposed criminal matter, or under any pretense whatsoever, except when, according to the provisions of this chapter, such person can be neither discharged nor bailed, or otherwise relieved, may prosecute a writ of habeas corpus as herein provided, to inquire into the cause of such confinement or restraint."

The essence of this section is that every person restrained of his liberty may prosecute a writ of habeas corpus to inquire into the cause of that restraint. This right, however, is qualified by the except clause, "except when, according to the provisions of this chapter, such person can be neither discharged nor bailed, or otherwise relieved, . . ." This does not say that a writ of habeas corpus will not issue in all cases where the individual can neither be "discharged nor bailed, or otherwise relieved", but instead the writ shall not issue where the provisions of chapter 532 say it shall not. Specifically, section 532.040 provides the writ shall not be entertained by an inferior court where the relief sought was refused by a superior court; section 532.390 provides no person shall be discharged pursuant to chapter 532 who is in custody of or enlisted in the military of the United States, or who is a prisoner of war under authority of the United States, or who is in custody for treason, felony, or high misdemeanor, committed in any other state or territory, and by the constitution and laws of the United States ought to be delivered to that state or territory; section 532.400 provides no person shall benefit from the provisions of chapter 532 whose confinement is erroneous as to time or place of imprisonment, but he may be otherwise relieved by sentencing him to the proper place and for the correct amount of time; section

---

1. All citations are to RSMo 1969 unless otherwise indicated.

532.410 provides the person shall be remanded to custody if he is detained by virtue of process of a federal court which has exclusive jurisdiction, or by virtue of a final judgment for civil or criminal contempt, or for any contempt specially and plainly charged in the commitment, or where the time has not expired during which the person may be legally detained; section 532.420 provides a party who has been remanded may not be discharged by a second writ where he is charged in the order remanding him or in the commitment order with a criminal offense; section 532.-450 provides that no person imprisoned under an indictment may be discharged under the provisions of chapter 532 unless the offense is bailable. None of these sections proscribe the prosecution of a writ of habeas corpus by one seeking relief from conditions of confinement.

A comment is needed by way of explanation regarding section 532.410, subd. 4, which provides a party shall be remanded if "the time during which such party may be legally detained has not expired." This section does not say that habeas relief is only available in those instances where a person may be discharged from custody. If it was read to allow habeas relief only when a person could be discharged, it would mean a prisoner could be confined under the most onerous conditions in violation of the prohibition against cruel and unusual punishment without the opportunity to be relieved from that condition. To interpret this section so restrictively would mean it either superseded the state and federal constitutions or it must be in contravention of those documents and, therefore, unconstitutional. A statute cannot lawfully supersede the constitution. It is our policy wherever possible to harmonize statutes with the constitution so as to make their interpretation come within the strictures of the constitution. In following this guideline, we are of the opinion that subdivision 4 of section 532.410 should not be interpreted so as to limit habeas relief to only those instances where the prisoner may be discharged. Nothing in this chapter, therefore, would prohibit the use of habeas corpus by prisoners seeking relief from inhumane conditions of their confinement which amount to cruel and unusual punishment.

Section 532.010, if read without the except clause, is quite similar to section 1473 of the California Penal Code (1970), as amended by Statutes 1975, c. 1047, p. 2726, sec. 2, which provides: "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." Since 1920 the California courts have interpreted this section to allow prisoners to challenge the conditions of their confinement. The first case to allow this expansion of the habeas corpus remedy was *Ex parte Rider,* 50 Cal.App. 797, 195 P. 965 (D.Ct. of App., 2d Dist., Div. 2, 1920). In *Rider* the petitioner claimed she was entitled to habeas corpus relief because she was unlawfully restrained of her liberty due to the refusal of the authorities to allow her to consult privately with her lawyer. The respondent argued, as does the respondent in the instant case, that habeas corpus was not the proper remedy because petitioner was lawfully confined pursuant to a valid commitment order and could not be discharged from custody. The court dealt with this contention at 966 wherein it stated:

"Respondent's argument places too narrow limits upon the high prerogative writ of habeas corpus, the right whereto is guaranteed by the Constitution. By express statutory enactment, it may issue in all cases where the petitioner is unlawfully 'restrained of his liberty,' as well as where he is unlawfully imprisoned. Section 1473 of the Penal Code provides:

" 'Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint.'

"The office of the writ is to afford the citizen a speedy and effective method of securing the removal of any unlawful restraint upon his liberty; and the stat-

ute which confers the right has always been construed in favor of the liberty of the citizen. We think that a person may be said to be unlawfully 'restrained of his liberty,' so as to be entitled to the writ of habeas corpus, when, though lawfully in custody, he is deprived of some right to which, even in his confinement, he is lawfully entitled under the Constitution or laws of this state or the United States, the deprivation whereof serves to make his imprisonment more onerous than the law allows, or curtails, to a greater extent than the law permits even in his confinement, his freedom to go when and where he likes."

The principles set forth in *Rider* have received expansive treatment and general acceptance by the California courts. In recent cases the Supreme Court of California has allowed the prosecution of habeas corpus where prisoners have alleged cruel and unusual punishment on the part of their custodians. In the case of *In re Riddle*, 57 Cal.2d 848, 22 Cal.Rptr. 472, 372 P.2d 304 (Cal.bank 1962), a prisoner asserted he was subjected to cruel and unusual punishment because of beatings received by him at the hands of certain prison officials. The court recognized this allegation as an invasion of the prisoner's fundamental constitutional rights guaranteed to him under the federal and state constitutions. The court stated 57 Cal.2d at 851, 22 Cal.Rptr. at 473, 372 P.2d at 305: "The allegations of the petition stated a good cause for relief by habeas corpus. The California courts have used the writ not only to test jurisdiction, but also to protect the fundamental rights of prisoners." The Supreme Court of California, however, denied the writ and discharged its order to show cause because the proof did not support the allegation that the force used was excessive.

Following the lead of California have been the courts in Idaho, Kansas, Minnesota, New York, Oregon, Pennsylvania, and Utah. In *Commwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110 (1971), a prisoner claimed he was being subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution because he was in "grave danger of serious physical harm" and "the conditions of the cells and other areas of the prison were substandard." The state advanced the usual argument that habeas corpus was not the proper remedy because the prisoner's confinement was lawful and he was not entitled to be discharged. The Supreme Court of Pennsylvania responded with what we consider to be a convincing rationale at 112–113:

"Traditionally in Pennsylvania and in many other jurisdictions, the writ of habeas corpus has functioned only to test the legality of the petitioner's commitment and detention. It was long held that the manner of his treatment and discipline during confinement was not reviewable in habeas corpus proceedings. For example, see *Commonwealth ex rel. Milewski v. Ashe*, 362 Pa. 48, 66 A.2d 281 (1949), and *Commonwealth ex rel. Wright v. Banmiller*, 195 Pa.Super. 124, 168 A.2d 925 (1961). On the other hand, some states adopted a more liberal view and permitted the use of habeas corpus to secure relief from conditions constituting cruel and unusual punishment, even though the detention was legal. For example, see *In Re Riddle*, 57 Cal.2d 848, 22 Cal.Rptr. 472, 372 P.2d 304, cert. denied 371 U.S. 914, 83 S.Ct. 261, 9 L.Ed.2d 173 (1962); *Mahaffey v. State*, 87 Idaho 228, 392 P.2d 279 (1964); *State ex rel. Cole v. Tahash*, 269 Minn. 1, 129 N.W.2d 903 (1964); and Cf. *Hughes v. Turner*, 14 Utah 2d 128, 378 P.2d 888 (1963). See also, *People ex rel. Brown v. Johnston*, 9 N.Y.2d 482, 215 N.Y.S.2d 44, 174 N.E.2d 725 (1961), and *People ex rel. Rockey v. Krueger*, 62 Misc.2d 135, 306 N.Y.S.2d 359 (1969).

"The United States Supreme Court has also indicated in several instances that the use of the writ should not be restricted to a determination of the legality of the detention, and ruled that the writ may be utilized to secure relief from any restraint which violates freedoms considered basic and fundamental. *Peyton*

*v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), and *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

"In *Fay v. Noia,* supra, Mr. Justice Brennan, speaking for the Court, outlined in scholarly fashion the development and history of 'the great writ' and said [at 402, 83 S.Ct. at 829] that 'in a civilized society government must always be accountable to the judiciary for a man's imprisonment' and [at 405, 83 S.Ct. at 831] that *'there was respectable common law authority for the proposition that habeas was available to remedy any kind of governmental restraint contrary to fundamental law.'* (Our emphasis.)

"And in *Harris v. Nelson,* 394 U.S. 286, at pages 290, 291, 89 S.Ct. 1082, at page 1086, 22 L.Ed.2d 281 (1969), Mr. Justice Fortas, speaking for the Court, aptly said:

" 'The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its pre-eminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended * * *." U.S.Const., Art. I, § 9, cl. 2. The scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.

" 'As Blackstone phrased it, habeas corpus is "the great and efficacious writ, in all manner of illegal confinement." As this Court said in *Fay v. Noia,* 372 U.S. 391, 401–402, 83 S.Ct. 822, 829, 9 L.Ed.2d 837 (1963), the office of the writ is "to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints." ' [Footnote omitted.]

"Again in *Peyton v. Rowe,* supra, 391 U.S. at page 66, 88 S.Ct. at page 1556, the Court appropriately said:

" ' "[The writ] is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." '

"Finally, in a host of decisions the federal circuit courts have adhered to the view that habeas corpus is available to seek relief from a confinement under conditions which amount to cruel and unusual punishment. See *Johnson v. Dye,* 175 F.2d 250 (3d Cir. 1949); *Coffin v. Reichard,* 143 F.2d 443 (6th Cir. 1944); and, *Creek v. Stone,* 126 U.S.App.D.C. 329, 379 F.2d 106 (1967).

"Therefore, despite what has been said in our previous decisions, we now conclude and rule that habeas corpus is available to secure relief from conditions constituting cruel and unusual punishment, even though the detention itself is legal."

See also *Levier v. State,* 209 Kan. 442, 497 P.2d 265 (1972), and *Newton v. Cupp,* 474 P.2d 532 (Ct. of App. Ore.1970).

The petitioner in the instant case has a fundamental right to be free from any cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Art. I, sec. 21, Missouri Constitution 1945.

■ We are of the opinion that a prisoner is entitled to utilize habeas corpus to secure relief from inhumane conditions constituting cruel and unusual punishment even though the detention itself is legal. Concern has been registered that hereafter numerous petitions for writs of habeas corpus will be filed to remedy claimed wrongs which do not rise to the level of inhumane conditions constituting cruel and unusual punishment. It should be clearly understood that penal and correctional institutions are under the control and responsibility of the executive branch of government, not the judicial branch, and that courts will not interfere with the conduct, manage-

ment, and disciplinary control of this type of institution except in extreme cases. *Douglas v. Sigler,* 386 F.2d 684, 688 (8th Cir. 1967).

■ At the same time, however, it must also be clearly understood that when a petition for writ of habeas corpus alleges *specific facts* which, if true, would constitute inhumane conditions constituting cruel and unusual punishment, the petition may no longer be summarily dismissed for failure to state a claim. The court must proceed with the issuance of a show cause order preliminary to deciding whether the writ should issue or issue the writ. What takes place thereafter cannot accurately be predicted. The alleged conditions may be remedied and the writ quashed or a hearing to determine the facts may be necessary. In this type of case where relief is sought from certain conditions of confinement, the situation will usually remain rather fluid. By that is meant that the case may often be mooted by administrative action whereby judicial relief is no longer necessary.

■ The supreme and appellate courts of this state are primarily courts of review, not courts of original jurisdiction, and are therefore not in a position to originally entertain and hear this type of habeas corpus on a regular basis. Petitions for writs of habeas corpus seeking relief from the type of conditions noted supra should be filed in the circuit court of the county wherein the petitioner is confined.

The question of whether the specific facts alleged would, if true, constitute inhumane conditions of confinement amounting to cruel and unusual punishment is, of course, a decision which must be made in the first instance by the circuit judge and does not lend itself to an explication by this court of detailed specific criteria.

The essence of the respondent's argument is that we should deny the petitioner relief even though it be true that the conditions of his confinement constituted inhumane conditions amounting to cruel and unusual punishment because the only relief appropriate in a habeas corpus proceeding is discharge. This disregards the petitioner's rights under the constitutions of this state and the United States to be free from inhumane conditions which amount to cruel and unusual punishment. To do this would be to place the petitioner in the medieval position of having a right without any remedy to secure that right. Such a position is contrary to Art. I, sec. 14, of the Missouri Constitution 1945, which provides: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay."

It should be noted at this point that the respondent, after stating that the question of what remedy might be available is not before the court in this case, suggests there might be some other form of action available and speculates that a suit for declaratory judgment may be one such alternative. Respondent does not claim declaratory judgment would be an adequate remedy under the facts alleged in the instant case. It is quite difficult for those familiar with the judicial process to believe that, if a person is being confined in a rat-infested dormitory, the time-consuming procedures involved in a declaratory judgment action would afford him reasonable relief from that type of confinement prior to being severely injured by the rats.

Since we have concluded that habeas corpus is the proper remedy, it is now incumbent upon us to determine whether the petitioner is presently being subjected to cruel and unusual punishment. We are of the opinion the petitioner has failed to establish that he is presently suffering from cruel and unusual punishment. The evidence does show he was bitten by a rat and he alleged that the dormitory was rat infested; that the prison officials are fully aware of that condition but took no remedial action. That was the basis upon which we issued our writ. The evidence also shows the petitioner was promptly treated in the hospital and the warden has since contracted with an exterminating company for its extermination service on a once-a-month basis. Although there is conflicting evidence on the issue of whether rats are

still present in housing unit No. 9, the facts as stipulated show the warden would testify that there have been no reports of the presence of rats since the exterminating company has been employed. The stipulation recites the petitioner would testify that three inmates in housing unit No. 9 told him they had seen rats in that unit after the extermination began.

 The so-called "Stipulation of Facts" in this case does not stipulate very many facts but merely recites what various people, including petitioner, would testify to if called as witnesses and, as such, does not provide the court with any substantial evidence upon which a factual finding that petitioner's dormitory is rat infested could be made. There is no stipulation that the dormitory did in fact continue to be rat infested after the warden instituted vermin-control procedures. The recitals as to what petitioner would testify to with respect to what other inmates claim to have seen does not amount to substantial evidence on the matter. The petitioner has the burden of proof to show that he is entitled to habeas corpus relief, *State v. Swink,* 241 Mo.App. 1048, 256 S.W.2d 825 (1953), but both parties chose to submit the case on their "Stipulation". On the state of the record in this case, the court finds against the petitioner on his allegation that rat infestation continued after the vermin-control procedures were initiated and therefore concludes that the writ of habeas corpus heretofore issued should be quashed.

As indicated supra, the court does not intend by its ruling today to suggest that it is the function of the courts to superintend the treatment and discipline of prisoners. The responsibility for that is in the executive branch of government and those in charge of penal institutions. Nor do we intend that habeas corpus should be resorted to where the conditions complained of can be remedied by administrative action. For those individuals who choose to file petitions for the purpose of harassing public officials, the warning given by the Idaho Supreme Court in *Mahaffey v. State,* 87 Idaho 228, 392 P.2d 279, 281 (1964), is appropriate:

"Because of the fact that we may not, on an application for a writ of habeas corpus, dispute the veracity of the allegations contained in the petition, it is foreseeable that any number of fabrications could be employed in order that the writ might issue. If such tactics are used, this court will not hesitate to deal harshly, through either its power of contempt or by reference to the proper authorities for prosecution on the charge of perjury, against those who would employ fraud and deceit to win a minor legal victory. Any individual who attempts to make a mockery out of procedures designed to benefit the wronged is tampering with the very foundation of our judicial process and risks having additional punishment imposed."

The writ of habeas corpus is quashed.

All concur.

RENDLEN, J., not participating because not a member of the court when cause was submitted.