**Donald MARSHALL,
Petitioner-Appellant,**

v.

**Haydee KORT, Superintendent,
Colorado State Hospital,
Respondent-Appellee.**

No. 82SA518.

Supreme Court of Colorado,
En Banc.

Oct. 22, 1984.

---

220

David F. Vela, Colorado State Public Defender, Diana L. DeGette, Sp. Deputy State Public Defender, Denver, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., M. Tracy James, Asst. Atty. Gen., Denver, for respondent-appellee.

DUBOFSKY, Justice.

The petitioner Donald Marshall appeals the Pueblo County District Court's dismissal of his petition for a writ of habeas corpus. The court ruled that habeas corpus was not the proper remedy for failure to treat the petitioner, who had been committed to the state psychiatric hospital after a verdict of not guilty by reason of insanity. We reverse.

The petitioner was found not guilty by reason of insanity in 1979, and was committed to the Colorado State Hospital. He sought release under section 16–8–115, 8 C.R.S. (1983 Supp.),[1] but the Fremont County District Court denied his release after a hearing on November 12, 1981. The court's denial barred the defendant from seeking release under section 16–8–115 until November 12, 1982, at the earliest. On July 30, 1982, the petitioner filed a petition for a writ of habeas corpus in the

---

1. Section 16–8–115(1), 8 C.R.S. (1983 Supp.) provides:

The court may order a release hearing at any time on its own motion, on motion of the prosecuting attorney, or on motion of the defendant. The court shall order a release hearing upon receipt of the report of the chief officer of the institution in which the defendant is committed that the defendant no longer requires hospitalization, as provided in section 16–8–116, or upon motion of the defendant made after one hundred eighty days following the date of the initial commitment order. Except for the first hearing following the initial commitment order, unless the court for good cause shown permits, the defendant is not entitled to a hearing within one year subsequent to a previous hearing.

Pueblo County District Court alleging that his confinement in the maximum security unit at Colorado State Hospital in Pueblo was unlawful for lack of treatment, particularly because he was receiving no training in "street survival" or in "ordinary social skills." His petition also alleged that the reason his release was denied at the November 12th hearing was that he constituted a danger to himself, chiefly because he was not properly socialized and not ready to be integrated into "street life" without preparation.

The district court did not take evidence; instead it dismissed the petition on the basis that a petition for a writ of habeas corpus under section 13–45–103(2)(b), 6 C.R.S. (1973) was not the proper way to challenge lack of treatment. The district court held that the petitioner was not entitled to release because of an asserted failure of hospital officials to treat him, and, further, that the petitioner could only be released when he "has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future." § 16–8–120(1), 8 C.R.S. (1978).[2] Implicit in the district court's ruling was an assumption that the only remedy available in habeas corpus proceedings is release from all confinement.

■ The petitioner asserts that habeas corpus is a proper method for persons committed after a plea of not guilty by reason of insanity to challenge a lack of treatment. If the petitioner's allegation is true that he was denied release from the maximum security unit of the Colorado State Hospital because he was not properly socialized and not ready to be integrated into "street life," then presumably the only way he can ever become eligible for release is to have the hospital provide him training in "street survival" or "ordinary social skills." The petitioner does not request a discharge from the Colorado State Hospital; instead he alleges that because of the refusal of hospital officials to treat him, he has been denied "the right to gradually 'earn his release back into mainstream society.'" He requests only that the court at a hearing determine the legality of his incarceration.[3] We conclude that the petitioner is entitled to a determination of the legality of his confinement and, if he can prove his allegations, a remedy that addresses appropriate treatment short of immediate release.

■ Section 13–45–103(2)(b) permits issuance of a writ of habeas corpus in cases "[w]here, though the original imprisonment was lawful, yet by some act, omission, or event which has subsequently taken place, the party has become entitled to his discharge . . . ." In habeas corpus proceedings, judicial inquiry generally is an investigation of the validity of a petitioner's confinement at the time of the hearing. *White v. Rickets*, 684 P.2d 239, 242 (Colo.1984); *Ryan v. Cronin*, 191 Colo. 487, 553 P.2d 754 (1976); *Crumrine v. Erickson*, 186 Colo. 139, 526 P.2d 148 (1974); *McGill v. Leach*, 180 Colo. 331, 505 P.2d 374 (1973); *North v. Koch*, 169 Colo. 508, 457 P.2d 915 (1969). As we noted in *White v. Rickets*, the "intervention by the judiciary into the administration of corrections programs by executive officials is reserved for most serious violations of fundamental rights, and an allegation to that effect is essential to any claim for habeas corpus relief." 684 P.2d at 241. Here the petitioner asserts that the particular circumstances of his

---

2.  The General Assembly amended the applicable test for release in 1983. The new test, as set forth in § 16–8–120(3), 8 C.R.S. (1983 Supp.) is: As to any person charged with any crime allegedly committed on or after July 1, 1983, the test for determination of a defendant's sanity for release from commitment, or his eligibility for conditional release, shall be: "That the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or others or to the community in the reasonably foreseeable future, and is capable of distinguishing right from wrong and has substantial capacity to conform his conduct to requirements of law."

3.  In his brief to this court, the petitioner asserts that if the court determines, after a hearing, that he was not receiving treatment, he should be entitled to release.

place of confinement deprive him of constitutionally protected rights.

Under section 13–45–103(2)(b), the issuance of a writ is triggered by conditions entitling a petitioner to discharge; the statute, however, does not specify that discharge is the sole remedy available for such conditions. In fact, section 13–45–101(1), 6 C.R.S. (1978) commands the court to issue the writ of habeas corpus "unless it appears from the petition itself, or from the documents annexed, that the party can neither be discharged nor admitted to bail *nor in any other manner relieved.*" (Emphasis supplied.) Section 13–45–103(1), 6 C.R.S. (1978) sets out the procedure for the court to follow upon the return of the writ of habeas corpus, concluding that "[t]he court shall proceed in a summary way to settle the facts by hearing the testimony and arguments of all parties interested civilly, if there are any, as well as of the prisoner and the person who holds him in custody and shall *dispose of the prisoner as the case may require.*" (Emphasis supplied.) Such open-ended relief accords with the essential purpose of the writ: "The very nature of the writ demands that it be administered with the initiative and flexibility to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson,* 394 U.S. 286, 290, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969).[4]

■ This court has held that relief short of total discharge is available through habeas corpus. In *Schooley v. Wilson,* 150 Colo. 483, 374 P.2d 353 (1962), an alleged parole violator was imprisoned in violation of the statute governing parole revocation. The court held that

> [h]abeas corpus is the remedy for an unlawful restraint of one's liberty as well as for an unlawful imprisonment. [Citation.] When one entitled to his liberty, even though in the constructive custody of the state, is actually imprisoned, his imprisonment becomes "more onerous than the law allows." Under such circumstances, he may resort to the remedy of habeas corpus and is entitled to be released from physical confinement and restored to a constructive custody. *Ex parte Rider,* 50 Cal.App. 797, 195 P. 965.

*Id.* at 486, 374 P.2d 353. Thus, any restriction in excess of legal restraint that substantially infringes on basic rights may be remedied through habeas corpus, even if total discharge does not result.

Many other jurisdictions have also reached this conclusion. *Ex Parte Rider,* cited by the court in *Schooley,* held that a writ of habeas corpus may command prison officials to permit consultations between a prisoner and attorney. The writ is available, the court determined, when the prisoner "is deprived of some right to which, even in his confinement, he is lawfully entitled ...." 195 P. at 966. A number of courts have also held that onerous prison conditions may be remedied through habeas corpus, on the grounds that such conditions constitute illegal restraints on liberty. *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Jackson v. Carlson,* 707 F.2d 943 (7th Cir.), *cert. denied* —— U.S. ——, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983); *Albers v. Ralston,* 665

---

**4.** In addition, section 27–10–116(1)(b), 11 C.R.S. (1982) recognizes that relief short of discharge is available through habeas corpus:

> Any person receiving evaluation or treatment under any of the provisions of this article is entitled to petition the court pursuant to the provisions of section 13–45–102, C.R.S. 1973, for release to a less restricted setting within or without a treating facility or release from a treating facility when adequate medical and psychiatric care and treatment is not administered.

Section 13–45–102, 6 C.R.S. (1973) provides for habeas relief in civil cases.

Although we have upheld more stringent release procedures for mentally ill persons who have been acquitted of criminal charges by reason of insanity than for persons who are civilly committed, *see People v. Chavez,* 629 P.2d 1040 (Colo.1981), section 27–10–101(1), 11 C.R.S. (1982) provides:

> The general assembly hereby declares that the purposes of this article are: (a) To secure for each person who may be mentally ill such care and treatment as will be suited to the needs of the person and to insure that such care and treatment are skillfully and humanely administered with full respect for the person's dignity and personal integrity; ....

F.2d 812 (8th Cir.1981); *Cook v. Hanberry,* 596 F.2d 658 (5th Cir.), *cert. denied* 442 U.S. 932, 99 S.Ct. 2866, 61 L.Ed.2d 301 (1979); *Mead v. Parker,* 464 F.2d 1108 (9th Cir.1972); *Armstrong v. Cardwell,* 457 F.2d 34 (6th Cir.1972); *In re Davis,* 25 Cal.3d 384, 599 P.2d 690, 158 Cal.Rptr. 384 (1979); *Hamrick v. Hazelet,* 209 Kan. 383, 497 P.2d 273 (1972); *McIntosh v. Haynes,* 545 S.W.2d 647 (Mo.1977); *Bekins v. Cupp,* 274 Or. 115, 545 P.2d 861 (1976); *Commonwealth v. Hendrick,* 444 Pa. 83, 280 A.2d 110 (1971); *Hackl v. Dale,* 299 S.E.2d 26 (W.Va.1982).[5] In *McIntosh,* the court, construing a habeas statute similar to the Colorado statute, noted, "If [the statute] was read to allow habeas relief only when a person could be discharged, it would mean a prisoner could be confined under the most onerous conditions in violation of the prohibition against cruel and unusual punishment without the opportunity to be relieved from that condition." 545 S.W.2d at 650.

Here, the petitioner alleges that he is being held "illegally and without due process of law" because he has been denied a right to treatment. Although this court has not previously addressed the issue, several courts have held that involuntarily committed persons have a constitutional right to treatment. *Scott v. Plante,* 691 F.2d 634, 636–37 (3d Cir.1982), *aff'g* 641 F.2d 117 (3d Cir.1981); *Donaldson v. O'Connor,* 493 F.2d 507, 527 (5th Cir.1974), *vacated on other grounds,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Davis v. Balson,* 461 F.Supp. 842, 852 (N.D.Ohio 1982); *Wyatt v. Stickney,* 325 F.Supp. 781, 784 (M.D.Ala.1971), *aff'd sub nom. Wyatt v. Aderholt,* 503 F.2d 1305 (5th Cir.1974); *see also Rouse v. Cameron,* 373 F.2d 451, 453–54 (D.C.Cir.1966) (constitutional problems with non-treatment of criminal committees led to adoption of D.C. Code provision giving right to treatment); *Davis v. Watkins,* 384 F.Supp. 1196, 1197 (N.D.Ohio 1974) ("the State, upon committing an individual 'until he regains his sanity,' incurs a responsibility to provide such care as is reasonably calculated to achieve that goal."); *United States v. Pardue,* 354 F.Supp. 1377 (D.Conn.1973) (confining prisoner incompetent to stand trial, without treatment, raises serious eighth and fourteenth amendment issues). In addition, section 16–8–105(4), 8 C.R.S. (1978) provides that persons in the petitioner's situation shall receive "care and psychiatric treatment."[6] Although we need not decide

**5.** A few states have held that habeas corpus is not available to remedy conditions of incarceration. *See, e.g., Brown v. Caldwell,* 231 Ga. 795, 204 S.E.2d 137 (1974); *People ex rel. Willis v. Department of Corrections,* 51 Ill.2d 382, 282 N.E.2d 716 (1972). Both *Brown* and *Willis,* however, were predicated on the existence of statutory procedures for correcting prison conditions; in Colorado no statutory procedures provide a means to address lack of treatment. Some federal jurisdictions also adhere to the view that habeas corpus relief is available only in the form of release from illegal confinement, and that challenges to prison conditions thus are not cognizable in habeas proceedings. *See, e.g., United States v. Sisneros,* 599 F.2d 946 (10th Cir.1979); *Granville v. Hunt,* 411 F.2d 9 (5th Cir.1969); *United States ex rel. Broadnax v. DeRobertis,* 565 F.Supp. 327 (N.D.Ill.1983). We believe that this view does not accord with the purpose and rationale of habeas corpus, or with the weight of case authority, particularly the decisions of the United States Supreme Court concerning the scope of federal habeas corpus relief. *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (alternative holding that challenges to prison conditions cognizable in habeas proceedings); *Carafas v. Lavallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (federal habeas statute affords relief short of release from confinement). *But cf. Bell v. Wolfish,* 441 U.S. 520, 526 n. 6, 99 S.Ct. 1861, 1867 n. 6, 60 L.Ed.2d 447 (1979) (availability of habeas relief for prison conditions remains open question).

**6.** In *Romero v. Schauer,* 386 F.Supp. 851, 861 (D.Colo.1974), the federal district court held that this provision gives persons criminally committed a right to treatment, and that their equal protection rights are violated if they are not given the same care as those civilly committed. Moreover, in *People v. Chavez,* 629 P.2d at 1048, we noted that the statutory scheme governing criminal committees "contemplates that the defendant's present need for care and treatment ... will be addressed." In addition, the Standing Committee on ABA Standards for Criminal Justice finds no justification for treating a committed mentally disabled prisoner any differently within the hospital from civilly committed patients "in terms of access to tele-

at this time the merits of the petitioner's claim, a forum should be provided to hear such serious claims.[7]

The only other courts that have considered this issue have found that denial of either a constitutional or statutory right to treatment to those committed through the criminal process is cognizable in habeas proceedings. *Williams v. Richardson*, 481 F.2d 358 (8th Cir.1973) (lack of treatment for criminally committed cognizable in habeas proceedings); *Rouse*, 373 F.2d 451 (denial of statutory right to treatment of insanity acquittees cognizable in habeas proceedings); *Stachulak v. Coughlin*, 364 F.Supp. 686 (N.D.Ill.1973) (habeas hearing required for sex offenders alleging lack of treatment); *Nason v. Superintendent*, 353 Mass. 604, 233 N.E.2d 908 (1968) (lack of treatment for those incompetent to stand trial cognizable in habeas proceedings); *Maatallah v. Warden*, 86 Nev. 430, 470 P.2d 122 (1970) (claim of lack of treatment for those incompetent to stand trial cognizable in habeas proceedings); *People ex rel. Perrello v. Smith*, 364 N.Y.S.2d 945, 47 A.D.2d 106 (1975) (failure of rehabilitation institute to provide treatment cognizable in habeas proceedings).

■ If the petition is not heard in this case, the petitioner, as in *McIntosh*, may be left "without the opportunity to be relieved from [his] condition." 545 S.W.2d at 650.

The district court here directed the petitioner to the committing court in Fremont County for consideration of whether state hospital officials are ignoring their statutory duty to treat the petitioner.[8] The district court's order implies that the petitioner may seek relief for failure to receive treatment under the release provisions in section 16–8–115, 8 C.R.S. (1983 Supp.). The only portion of that statute which conceivably could allow a court to consider the failure to receive treatment is subsection (2), which provides in pertinent part:

> The court shall order a release examination of the defendant when a current one has not already been furnished or when either the prosecution or defense moves for an examination of defendant at a different institution or by different experts. The court may order any additional or supplemental examination, investigation, or study which it deems necessary to a proper consideration and determination of the question of eligibility for release. The court shall set the matter for release hearing after it has received all of the reports which it has ordered under this section. When none of said reports indicate the defendant is eligible for release, the defendant's request for a release hearing may be denied by the court if the defendant is unable to show

phones, correspondence rights, [and the] right to treatment." *ABA Standards for Criminal Justice* 7–10.8 commentary (adopted Aug. 7, 1984). The committee recommends that the rights accorded to committed prisoners should be consistent with the rights enumerated in the standards with respect to the legal status of prisoners. *See ABA Standards for Criminal Justice* 23–1.1 (1982 Supp.).

7. Recently, we ruled that a petitioner who had been committed to the custody of the Department of Corrections for an indefinite term under the Colorado Sex Offenders Act, § 16–13–203, 8 C.R.S. (1978), was not entitled to seek a transfer to Fort Logan Mental Hospital through a petition for a writ of habeas corpus. There we noted that the

> [p]etitioner alleges only that the place of his confinement should be altered. He does not assert that the particular circumstances of his place of confinement deprive him of constitutionally protected rights .... In the absence

of appropriate factual allegations in the petition, the trial court did not err in dismissing petitioner's request for habeas corpus relief. *White v. Rickets*, 684 P.2d 239, 242 (Colo.1984). In this case, in contrast, petitioner specifically has alleged violation of his constitutional rights. We need not reach here the substantive issue of whether the petitioner has a due process right to treatment, as the district court has not yet held a hearing on the issue.

8. Ironically, this petitioner first sought a writ of habeas corpus in Fremont County District Court, but the district court there denied the writ because of improper venue. Venue in habeas corpus cases is properly laid, in accordance with C.R.C.P. 98(b)(2), in the county where the action complained of took place. *Evans v. District Court*, 194 Colo. 299, 572 P.2d 811, 814 (1977). To the extent that *Brisbin v. Schauer*, 176 Colo. 550, 492 P.2d 835 (1971) may require a different result in criminal commitment cases, we overrule that decision.

by way of an offer of proof any other evidence that would indicate that he is eligible for release.

On its face, this section does not provide any basis for the petitioner to challenge the conditions of his confinement or his lack of treatment. Therefore, the allegations in the petition before us are sufficient to entitle the petitioner to a hearing on his request for habeas corpus relief.

The district court's order dismissing the petitioner's writ of habeas corpus is reversed, and the case is remanded for reinstatement of the petition and a hearing on its merits.

ERICKSON, C.J., dissents, and ROVIRA, J., joins in the dissent.

ERICKSON, Chief Justice, dissenting:

I respectfully dissent. In my view, habeas corpus is not available as a means to force compliance with existing statutory procedures.

The petitioner was committed to the state hospital pursuant to provisions of the Criminal Code, following a verdict of not guilty by reason of insanity. The Criminal Code provides that a person found not responsible for a crime by reason of insanity shall be committed until he is found to be eligible for release. § 16–8–105(4), 8 C.R.S. (1978). Release may be obtained only when the person committed "has no mental condition which would be likely to cause him to be dangerous to himself or others or to the community in the reasonably foreseeable future." § 16–8–120(1), 8 C.R.S. (1978).

Once committed under the statute, a person found not guilty by reason of insanity remains subject to the supervision of the committing court. The court is empowered, for example, to order a release hearing, and may grant a full or conditional release, and "may order any additional or supplemental examination, investigation, or study which it deems necessary to a proper consideration of the question of eligibility for release." §§ 16–8–115(1) & (2), 8 C.R.S. (1983 Supp.); cf. Parks v. District Court,

180 Colo. 202, 503 P.2d 1029 (1972) (court which commits a person adjudged incompetent to stand trial retains jurisdiction to oversee his commitment and to protect his constitutional rights). As part of the court's supervision over the commitment, it is also empowered to enjoin any actual mistreatment and require correction of any conditions that are contrary to the purpose of the commitment. Crawford v. Bell, 599 F.2d 890 (9th Cir.1979). The court also has the inherent power to enforce its remedial orders in contempt proceedings. Austin v. City and County of Denver, 156 Colo. 180, 397 P.2d 743 (1964).

The Criminal Code is similar to the civil commitment statute in providing that the commitment shall be for purposes of "care and psychiatric treatment." See § 16–8–105(4), 8 C.R.S. (1978); People v. Chavez, 629 P.2d 1040, 1048 (Colo.1981); see also Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); ABA Standards for Criminal Justice, Criminal Justice Mental Health Standards, Standard 7–10.8, Commentary (1984); cf. §§ 27–10–101 & 27–10–116, 11 C.R.S. (1982). However, the statutory procedures governing civil commitment, treatment, and release differ from the post-trial procedures which govern a person found not guilty by reason of insanity under the Criminal Code.

An insanity adjudication results in a presumptive continuation of the state of mental incapacity until it has been shown that sanity has been restored. Chavez, 629 P.2d at 1048. Persons who have committed criminal acts but who are not criminally responsible by reason of insanity are committed for their own protection and for the protection of the public, and such public safety considerations justify distinct standards governing commitment and release. 629 P.2d at 1052–53; see also Jones v. United States, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). The essential difference between the criminal and civil procedures is recognized in the provisions in the civil commitment statute which expressly limit the scope of the various procedures and protections to persons committed pur-

suant to Article 27. *See, e.g.,* § 27–10–113 (availability of habeas corpus to any person detained "pursuant to this article"); § 27–10–116(1)(a) (right to treatment for persons committed "under any of the provisions of this article"). Authorities providing procedures and remedies for persons civilly committed are not applicable to commitments pursuant to the Criminal Code.

In this case, the district court found that the petitioner's assertion that hospital officials had failed to provide treatment did not bring him within the ambit of the habeas corpus statute which permits habeas relief following lawful confinement when a subsequent act or omission entitles a party to discharge. § 13–45–103(2)(b), 6 C.R.S. (1978). In discharging the writ of habeas corpus, the court concluded that, having been committed under the Criminal Code, petitioner could be released from custody only when he met the statutory criteria specified in section 16–8–120. The court stated that any allegations of lack of treatment could and should be directed to the attention of the committing court.

The majority now holds that the petitioner's allegations of lack of treatment are cognizable in a habeas corpus proceeding. The purpose of a writ of habeas corpus, however, is to determine whether a person is unlawfully confined. *Ryan v. Cronin,* 191 Colo. 487, 553 P.2d 754 (1976). The essence of habeas corpus is an attack upon the legality or duration of confinement, and the function of the writ is to secure release from illegal custody. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Crawford v. Bell,* 599 F.2d at 892.

Colorado's habeas corpus statute, which we must interpret in this case, provides that a person in custody may allege in his petition "any fact to show either that the imprisonment or detention is unlawful or that he is then entitled to his *discharge* ...." §§ 13–45–103(1) & (2), 6 C.R.S. (1973) (emphasis supplied). The only relief which may be afforded under the statute is the discharge of the petitioner. The relief afforded by the majority invades the prov-

ince of the legislature and creates a judicial remedy for those who question the treatment they receive after being found not guilty of a crime by reason of insanity.

In my view, a writ of habeas corpus is not available to force compliance with statutory duties and procedures by directing state hospital officials to provide particular care and treatment to their patients. *Granville v. Hunt,* 411 F.2d 9 (5th Cir. 1969); *see also United States v. Sisneros,* 599 F.2d 946 (10th Cir.1979); *Cognato v. Ciccone,* 558 F.2d 512 (8th Cir.), *cert. denied,* 434 U.S. 974, 98 S.Ct. 530, 54 L.Ed.2d 465 (1977). A habeas corpus proceeding is not a proper method to challenge conditions of confinement, including lack of treatment, when other forms of relief are available. *See, e.g., Brown v. Caldwell,* 231 Ga. 795, 204 S.E.2d 137 (1974) (inmate grievances must first be raised within the department of corrections and, upon an adverse determination, through the courts in the nature of mandamus or injunction; habeas corpus is not available); *People ex rel. Willis v. Department of Corrections,* 51 Ill.2d 382, 282 N.E.2d 716 (1972) (allegations of lack of treatment are to be addressed through comprehensive administrative program undertaken by department of corrections; habeas corpus is unavailable).

Petitioner alleges that, since his confinement at the state hospital, he has received no instruction in "ordinary social skills" and no treatment or training with regard to "street survival." Under the statute, however, the petitioner is entitled to release when he is no longer a danger to himself or to others or to the community in the reasonably foreseeable future. § 16–8–120(1), 8 C.R.S. (1978). The petitioner does not allege that the treatment which is being provided is not directed to the statutory criteria for release. In a proper case, a petitioner can obtain an order directing that he be provided treatment, but the court cannot direct what treatment should be offered. *In re: Question Concerning Judicial Review,* 199 Colo. 463, 610 P.2d 1340 (1980). If the state hospital in this case failed to comply with its duty to pro-

vide the type of care and treatment to the petitioner that is required by the statute, relief in the nature of mandamus was available through the committing court, by virtue of the court's continuing jurisdiction over the petitioner. *See Lamm v. Barber,* 192 Colo. 511, 565 P.2d 538 (1977); *Board of County Commissioner v. Edwards,* 171 Colo. 499, 468 P.2d 857 (1970) (writ of mandamus is justified where a statutory duty has not been complied with or a statutory responsibility has not been met).

I cannot agree that, absent habeas corpus, the petitioner would be left without the opportunity to obtain relief from his present conditions. I would therefore affirm the discharge of the writ of habeas corpus.

I am authorized to say that Justice ROVIRA joins me in this dissent.