No. 20456.

ESTHER AUSTIN *v.* CITY AND COUNTY OF DENVER.
(397 P.2d 743)

Decided December 21, 1964.

EUGENE J. ROBERTS, for plaintiff in error.

ROBERT S. WHAM, City Attorney, THOMAS A. GILLIAM, Assistant, ROBERT M. KELLY, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

ESTHER AUSTIN was adjudged guilty of contempt of the Superior Court in Denver. A fine of $100.00 (the approximate cost of a trial of the cause in which she was then a defendant) was assessed against her. It is this action of the trial court which is the subject of attack by the present writ of error.

Esther was convicted in the Municipal Court in Denver of violating an ordinance of that city. She appealed the judgment and sentence imposed to the Superior

Court, where, on a trial de novo, the jury was unable to agree on a verdict.

The entire proceeding involving the contempt took place before the jury was discharged as the result of the belief of the trial court that the jurors were insolubly deadlocked. We quote the proceeding in its entirety:

"FOREMAN (JUROR NO. 2): Your Honor, this lady here (indicating Juror No. 4) says that the defendant —

"THE COURT: Has she come to some conclusion for or against the defendant that would affect the verdict in this particular case?

"FOREMAN: Well, we don't know. She said that the lady offered her some papers, or some letters to read when she came in the courtroom.

"THE COURT: Did she read those papers?

"MRS. MADGE BROWN (JUROR NO. 4): No, I didn't.

"THE COURT: Are you badly divided in your deliberation?

"FOREMAN: Three and three.

" (THE COURT presented 'Third Degree' instruction.)

" (After Court determined jury was deadlocked.)

"THE COURT: Which juror was it that the letters were passed to?

"MRS. BROWN: She didn't pass them to me. We were sitting out there. She asked what school I was teaching, and I told her. She said, 'I have a letter here where I delivered some papers,' and she asked that I take a look at them, but I didn't.

"THE COURT: Did this occur before the jury was selected?

"MRS. BROWN: No, it did not.

"DEFENDANT AUSTIN: After the recess.

"THE COURT: During the noon recess, after the jury was sworn?

"DEFENDANT AUSTIN: Yes, I didn't recognize her.

"COUNSEL SCHWARE: The letters themselves are harmless.

"DEFENDANT AUSTIN: Read them, Your Honor."

On the following day, the trial court entered its order, to-wit:

"Before dismissal of the jury in Case No. S-24337, the foreman of the jury called to the attention of the Court the fact that the defendant had contacted Juror No. 4, Madge Brown, during the noon recess. The testimony of the juror was subsequently taken, and was to the effect that the defendant had approached the juror and asked in what school the juror taught. This information that she was a school teacher was elicited during the *voir dire* examination of prospective jurors. Furthermore, the juror was the only woman Negro juror of the six chosen. The defendant must have known this, because her remark in asking what school she taught in demonstrated this knowledge. She then attempted to hand to the juror envelopes which she said would interest her.

"During the taking of the testimony of the defendant, in response to a question of Deputy City Attorney Kelly, the defendant rambled away from a direct answer to the question, and tossed from the witness box to the bench this same group of envelopes, stating to the Court that the Court would be interested in them.

"So it is apparent that it was in the mind of the defendant that the contents of these envelopes might influence the trial.

"It also appeared that the deliberations of the jury were affected by this effort of the defendant to contact Juror No. 4, because the matter was called to the attention of the Court by the foreman of the jury.

"The Court now believes that a mistrial should be declared because of the misconduct of the defendant, and that under the provisions of C.R.S. 39-7-21 the defendant should be punished for contempt of court.

"Accordingly, inasmuch as the cost of this jury was in

the neighborhood of $75.00, and other costs were incurred, the defendant is fined $100.00 for contempt of Court, which fine she is directed to pay within 15 days of this date, or a bench warrant will issue."

Whether the court read the letters, and whether they were harmless, the record does not reveal. An assurance that they were innocuous and inoffensive, and an offer to the court that it verify whether such be the case were efforts at mollifying the court in the pursuit of whatever purpose it had in mind in conducting the hearing.

■■ The power to punish for contempt, as a punitive measure or to coerce obedience, is an inherent and indispensable power of the courts. Such power "is not derived from the Legislature and cannot be made to depend upon the legislative will." Intrinsic in tribunals following the common law, such as ours, is the right to protect themselves against insults and indignities, interference with the administration of justice, and disobedience of their orders. *People v. News-Times Pub. Co.*, 35 Colo. 253, 84 Pac. 912, error dismissed, *Patterson v. People of Colorado ex rel.*, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879; *Hughes v. People,* 5 Colo. 436.

■ Although there is no fixed procedural formula for contempt proceedings, so that technical nicety is not required, *Schwartz v. United States,* 217 Fed. 866, courts should improvise a procedure which accords with due process of law. "No person shall be deprived of life, liberty or property, without due process of law." Art. II, Sec. 25, Constitution of Colorado.

■ Essential to due process in contempt proceedings is the right of one to know that the purpose of a hearing is the ascertainment of whether he is guilty of contempt. *Federal Trade Comm. v. A. McLean & Son,* 94 F.2d 802; *McCann v. New York Stock Exch.,* 80 F.2d 211; *Dept. of Health v. Roselle,* 34 N.J. 331, 169 A.2d 153; *State ex rel. Rodd v. Verage,* 177 Wis. 295, 187 N.W. 830, 23 A.L.R. 491.

■ Where the purpose of the proceeding is or may be

equivocal from the vantage of the person to be affected, it is the duty of the court to apprise him of the object of the hearing. "Hence the defendant must be informed at once of the purpose of the proceeding. It will not do to find its nature from the terms of the resulting judgment." *Dept. of Health v. Roselle,* supra; see *Yates v. United States,* 227 F.2d 844.

■ An open, overt hearing before a fair tribunal is basic to due process. Clearly, due process of law would be thwarted where, as here, the manner in which the hearing is conducted makes it doubtful as to its nature, and the hearing may be looked upon by the person to be affected as one to determine whether the court should declare a mistrial and discharge the jury, or as one merely to ascertain if a juror was influenced by the irregular conduct of the party litigant, or as one to adjudge if the party litigant was in contempt of the trial court.

■ Had Esther been informed of the purpose of the hearing, she may have had an explanation which would have been exculpatory. At least, she should have been afforded the opportunity to defend herself. Moreover, the letters may have been of an unexceptionable character, tempering whatever punishment should have been inflicted. Certainly the ascertainment of the quality of contempt "should not rest on speculation." *People v. Kimsey,* 101 Colo. 392, 74 P.2d 663.

■ Concretely, when the nature of the proceeding was definitely learned "from the terms of the resulting judgment," such knowledge came too late.

The judgment is reversed.

Mr. Justice Pringle did not participate.