719 P.2d 449

**STATE of New Mexico,
Petitioner-Appellee,**

v.

**JULIA S., Respondent-Appellant.**

No. 8549.

Court of Appeals of New Mexico.

April 24, 1986.

Paul G. Bardacke, Atty. Gen., Charles D. Noland, Asst. Atty. Gen., Patricia Frieder, Asst. Atty. Gen., Santa Fe, for petitioner-appellee.

Jacquelyn Robins, Chief Public Defender, Lynne Fagan, Asst. Appellate Defender, Santa Fe, for respondent-appellant.

Robert M. Aurbach, Executive Director, Administrative Office of Dist. Attys., Santa Fe, amicus curiae Admin. Office of Dist. Attys.

Martha A. Daly, Rothstein, Bailey, Bennett, Daly & Donatelli, Santa Fe, amicus curiae N.M. Civil Liberties Union.

Nancy Hollander, Freedman, Boyd & Daniels, P.A., Albuquerque, Alice C. Shotton, Loren M. Warboys, San Francisco, Cal., amicus curiae, N.M. Council on Crime and Delinquency.

## OPINION

ALARID, Judge.

Respondent Julia S. appeals from an order of the children's court incarcerating her

in a secure detention facility for fifteen days. The issue on appeal is whether the court had authority to order the incarceration for a child in need of supervision (CHINS) for a finding of a probation violation. We reverse. Statutory citations are to the Children's Code (Code), NMSA 1978, Sections 32-1-1 to -55 (Repl.Pamp.1981 and Cum.Supp.1985). We use the acronym CHINS to refer to both a "child in need of supervision" and "children in need of supervision."

## FACTS

A petition alleging respondent to be a CHINS was filed in Colfax County on December 8, 1983, under Sections 32-1-14 to -19 of the Code. The underlying allegations centered around respondent's habitual disobedience of the lawful demands of her parent, and her running away from home. At an adjudicatory hearing on January 12, 1984, respondent admitted the allegations of the petition, and the court accepted the admission. The court found that respondent was in need of supervision in that she habitually disobeyed the reasonable and lawful demands of her parent, and was ungovernable and beyond control. Pursuant to these findings, the court ordered that legal custody be vested in the Department of Human Services (Department) for an indeterminate period not to exceed two years. Respondent was fourteen years of age at the time. The court's written order was not entered until February 8, 1984. Prior to that time, the court had issued an arrest warrant for respondent, who had run away from temporary placement in a foster home. This placement was undertaken pending the entry of written judgment.

Respondent subsequently went to Colorado sometime in February or March, 1984, and the Raton Juvenile Probation Office "informally requested" that the court issue a bench warrant for her apprehension. The court denied the request, but ordered the Department to conduct a home study of respondent's father, with whom she was then living in Colorado. The court ordered that any further actions would be deferred pending completion of the home study.

On October 22, 1984, the Department requested a review of the initial judgment of the court and the subsequent order for a home study because (1) Colorado had not performed such study; (2) respondent had returned to Raton, and had refused to obey her mother and those placed in authority over her by the Department; (3) respondent had run away on October 14, and had not been apprehended until October 17; and (4) respondent had run away on October 18, and had not been apprehended as of October 22.

Respondent was apprehended and placed in detention until a hearing on the motion on October 31, 1984. The court ordered, after a hearing, that because respondent continued to be incorrigible and "refuses to cooperate in her own rehabilitation," the best interests of respondent required that consideration be given to revising the judgment after the completion of a diagnostic evaluation conducted by the Department of Corrections (Corrections). Custody of respondent was given to Corrections for sixty days.

On January 8, 1985, an "Order Amending Probation" was entered after the diagnostic report was received and reviewed. The court found that (1) custody with the Department should continue for the placement of respondent in a foster home; (2) the best interests of respondent required strict supervision and control by the Department and the Juvenile Probation Office; and (3) respondent should not be permitted to live with her mother. The court ordered that: (1) respondent was to be placed on probation under Juvenile Probation with custody given to the Department; (2) respondent was to obey all lawful commands of people placed in authority over her; (3) respondent was to attend school without unauthorized absences; (4) respondent was not to leave any foster home; (5) respondent was not to go out with male persons except as permitted; and (6) respondent was not to consume alcoholic beverages. The court termed conditions (2)–(6)

as "special" probation conditions, which the court commanded respondent to perform "under pain of contempt." The court also stated that any violations of probation conditions would be dealt with under the remedies provided for in the Code, as well as the court's contempt power, and that probation would extend for a period not to exceed two years.

On March 26, 1985, the children's court attorney filed a petition to revoke probation based on respondent's alleged violation of conditions (2), (3), (4) and (6). On April 30, 1985, the court entered a judgment and order. The court found a violation of these conditions after a hearing, and also found respondent to be in contempt of court for these violations. The court ordered: (1) that respondent be placed in detention for fifteen days at the Santa Fe County Detention Center, in a "lock up [sic] situation as punishment for her contempt * * * to receive no social work or rehabilitation"; (2) that she obey, upon release, the same conditions of probation or face further punishment provided in the Code and under the court's inherent contempt powers; and (3) that she be remanded to Juvenile Probation for continuing probation, and returned to her former foster home. The court ordered her transportation to the detention center. She served the fifteen-day sentence.

An appeal was taken from this order of incarceration. This court subsequently invited, and received, amici briefs from the New Mexico Council on Crime and Delinquency, the American Civil Liberties Union, and the Administrative Office of the District Attorneys of New Mexico. Amici briefs were requested because of the "significant questions regarding the use of the trial court's constitutional power of contempt * * * within the confines of the Children's Code."

## DISCUSSION

■ During oral argument, respondent's counsel informed the court that the sentence had been served. Normally, this would render the case moot. The issue raised, however, is "capable of repetition but evading review" and, therefore, we take jurisdiction. *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973).

■ We note, initially, that respondent alleges a jurisdictional error in the proceedings. She contends that the court did not specifically find that she was in need of care or rehabilitation when it adjudged her a CHINS in its judgment and order of February 8, 1984. She contends that, absent this finding, the court was powerless to order any disposition, and that any orders entered after the purported dispositional order were of no effect under *State v. Doe*, 90 N.M. 249, 561 P.2d 948 (Ct.App. 1977).

She is incorrect. By finding that she was "a child in need of supervision," the court implicitly found that she was "in need of care or rehabilitation." The statutory definition of a CHINS, in effect at the time of this proceeding, means a child who:

(1) being subject to compulsory school attendance, is absent from school without authorized excuse more than ten days during a school semester or has been suspended from school for nonattendance; or

(2) habitually disobeys the reasonable and lawful demands of his parent, guardian or custodian and is ungovernable and beyond control; or

(3) has committed an offense not classified as a delinquent act; *and*

(4) in any of the foregoing situations is in need of care or rehabilitation[.]

Section 32–1–3(N) (emphasis added). Therefore, the court was not required to make an additional finding of care or rehabilitation. *State v. Doe* is distinguishable because, in that case, the finding that the child committed "delinquent acts" was not equivalent, in statutory definition, to finding the child was "delinquent" and "in need of care or rehabilitation." *See* NMSA 1953, Repl.Vol. 3, § 13–14–3(N) and (O) (Pocket Supp.1975). The judgment and order of February 8, 1984 was properly entered.

We note, furthermore, that the issue of the sufficiency of the evidence of probation violations is not before us on appeal. Respondent's central contention on appeal is that the purpose of the Code is to furnish CHINS with supervision and rehabilitation, not incarceration, and that the contempt powers granted under the Code cannot be construed to allow the fifteen-day incarceration. The state and the Administrative Office of the District Attorneys argue that the inherent power of the court, coupled with the need to enforce its rulings, permits such an incarceration. Amicus Civil Liberties Union first argues that certain procedural steps were not taken by the court in imposing incarceration under Section 32–1–34(F) of the Code, which permits incarceration of a child based upon two previous probation violations. Amicus Civil Liberties assumes that this section is the governing authority in this case. Amicus Civil Liberties next argues that any inherent power of the court to punish for contempt may be reasonably restricted by the legislature, and that the legislature did not intend the extent of the punishment imposed in this case. Amicus Council on Crime and Delinquency contends that the purpose of the Code is directly opposite the purpose of the order of incarceration, and it presents sociological argument that incarceration of CHINS does nothing to rehabilitate the children and contravenes the legislative aims embodied in the Code.

We address: (1) the court's authority under the Code to incarcerate a CHINS for probation violations; and (2) the court's inherent contempt power to incarcerate for probation violations.

A. *Authority Under the Code*

■ The situation before us involved an indirect contempt of court because the violation of the court's terms of probation occurred outside of the court's presence. *State v. Diamond,* 94 N.M. 118, 607 P.2d 656 (Ct.App.1980). Moreover, the contempt proceeding involved a criminal contempt because the nature and purpose of the incarceration was to, in the court's words, "pun-

ish" respondent "pure and simple." *State ex rel. Department of Human Services v. Rael,* 97 N.M. 640, 642 P.2d 1099 (1982). The specific question is whether the incarceration was authorized under the Code where the indirect contempt consisted of a violation of probation.

The purpose of the Code, as enumerated in Section 32–1–2, is as follows:

A. first to provide for the care, protection and wholesome mental and physical development of children coming within the provisions of the Children's Code and then to preserve the unity of the family whenever possible. Permanent separation of the child from the family, however, would especially be considered when the child suffered permanent or severe injury or repeated abuse;

B. consistent with the protection of the public interest, to remove from children committing delinquent acts the adult consequences of criminal behavior, but to still hold children committing delinquent acts accountable for their actions to the extent of the child's age, education, mental and physical condition, background and all other relevant factors, and to provide a program of supervision, care and rehabilitation, including rehabilitative restitution by the child to the victims of his delinquent act to the extent that the child is reasonably able to do so;

C. to achieve the foregoing purposes in a family environment whenever possible, separating the child from his parents only when necessary for his welfare or in the interests of public safety;

D. to separate clearly in the judicial and other processes affecting children under the Children's Code the neglected child, the abused child, the child in need of supervision and the delinquent child and to provide appropriate and distinct dispositional options for treatment and rehabilitation of these children;

E. to provide judicial and other procedures through which the provisions of the Children's Code are executed and enforced and in which the parties are as-

sured a fair hearing and their constitutional and other legal rights are recognized and enforced;

F. to provide effective deterrents to acts of juvenile delinquency, including an emphasis on community based alternatives; and

G. to provide a continuum of services for children and their families from prevention to treatment considering wherever possible prevention, diversion and early intervention, particularly in the schools.

The Code "shall be interpreted and construed to effectuate" these goals. *Id.*

The Code grants the children's court authority to conduct evidentiary and dispositional hearings, concerning certain classes of children, Sections 32–1–31 and –34, after petitions have been filed with the court by the children's court attorney, alleging that a child comes under the operation of the Code, Sections 32–1–14 to –19. The court determines, at an evidentiary hearing, if the allegation that a child is a CHINS is denied, whether the child committed the acts enumerated in the petition. § 32–1–31(D). The quantum of proof is beyond a reasonable doubt, unless the allegations are admitted by the child. *Id.* The court next must find, after finding that the underlying acts were committed, Section 32–1–3(N)(1)–(3), that the child is in need of supervision, which encompasses the finding that the child is in need of care or rehabilitation. §§ 32–1–31(E) and (F). If the child is adjudicated a CHINS, the court may: (1) permit the child to remain with his parents under certain court-prescribed conditions; (2) place the child in the protective supervision of the Department, under a court-approved treatment plan; (3) transfer legal custody to the Department, which may lead to placement in a foster home; or (4) place the child on probation under court-prescribed conditions. § 32–1–34(B), (C) and (F). Significantly, "a child who has been found by the court on two previous occasions to have violated the conditions of his probation may be ordered by the court after a hearing to be held in a secure detention facility ... for a period not to exceed ten days," Section 32–1–34(F)(3).

Under Section 32–1–40(C), the Code provides: "Subject to the laws relating to the procedures therefor and the limitations thereon, the court may punish a person for contempt of court for disobeying an order of the court or for obstructing or interfering with the proceedings of the court or the enforcement of its orders." A person is an "individual or any other form of entity recognized by law," Section 32–1–3(K), and a child is defined as "an individual who is less than eighteen years old." § 32–1–3(A). A child is a "person" and, under the express language of Section 32–1–40(C), may be subject to punishment for contempt. Section 32–1–40(C) serves as a recognition of the power vested in the courts by the general contempt statute, NMSA 1978, Section 34–1–2 (Repl.Pamp.1981). The latter statute confers on courts the power "to preserve order and decorum, and for that purpose to punish contempts by reprimand, arrest, fine or imprisonment."

The question we must answer is whether Section 32–1–40(C) permits the court to incarcerate, under its contempt power, for a first probation violation, notwithstanding the language of Section 32–1–34(F)(3), which permits incarceration upon a finding of two previous occasions of probation violations. Respondent was incarcerated upon the court's finding a first violation of the order of January 8, 1985. This order set out the conditions of probation.

We analyze the propriety of the incarceration under the standard set forth in *State v. Doe*, 97 N.M. 263, 639 P.2d 72 (Ct.App. 1981): the court is expected to conduct children's court proceedings in a manner that will further the purposes and policies of Section 32–1–2. This expectation extends to the imposition of the court's contempt powers under Section 32–1–40(C). *See In re Doe*, 99 N.M. 517, 660 P.2d 607 (Ct.App.1983). Incarceration of a CHINS, therefore, is only permissible where the purposes and directives of the Code would be furthered. Section 32–1–40(C) specifically recognizes that the contempt power is

"subject" to legislatively-imposed limitation.

We keep in mind that respondent was found to be a CHINS, not a delinquent. The primary purpose of the Code, in relation to CHINS, is to provide for their care, protection and "wholesome mental and physical development," Section 32–1–2(A), and to achieve this purpose in a family environment wherever possible. § 32–1–2(C). The dispositional options for CHINS reflect this purpose. § 32–1–34(F). At the same time, it is imperative that CHINS be "separated clearly" in the judicial process from delinquent children. § 32–1–2(D). The differentiation between CHINS and delinquents is based on the social implications of their negative behavior. Delinquent children commit acts punishable as crimes under the criminal laws. § 32–1–3(P) and (O). These acts are directed against society at large. CHINS act in ways detrimental to themselves and to their families. CHINS do not act in a manner punishable as a crime. § 32–1–3(N).

This differentiation is reflected in the manner in which the Code punishes the two classes. A delinquent child may be incarcerated for the commission of his first delinquent act. § 32–1–34(E)(4). The incarceration shall not exceed fifteen days. *Id.* In stark contrast to delinquents, CHINS may not be incarcerated for their violations of probation until a pattern of disobedience, i.e., three occasions of probation violations, is found by the court. § 32–1–34(F)(3). The incarceration shall not exceed ten days. *Id.* Section 32–1–34(F)(3) embodies a legislative reluctance to utilize incarceration as punishment for CHINS, in keeping with the rehabilitative aspects of the Code. § 32–1–2. The punishment imposed is designed to be of a kind least likely to interfere with the "wholesome mental and physical development" of CHINS. § 32–1–2(A).

We conclude that the contempt provision, Section 32–1–40(C), does not grant authority to incarcerate CHINS for a probation violation other than in the instance specified in Section 32–1–34(F)(3). To conclude otherwise would negate the directives of Section 32–1–34(F)(3), which, in turn, would contravene the purpose of the Code. We must avoid that result. *See T.W.I.W., Inc. v. Rhudy,* 96 N.M. 354, 630 P.2d 753 (1981).

The order of incarceration was entered without authority under the Code.

### B. *Inherent Power*

The state argues that the inherent power of the courts to punish for contempt validates the court's order. The state contends that without this inherent power, the orders issued by the court would be unenforceable and meaningless. The court based its order, in part, on its constitutional grant of power. That grant is contained in N.M. Const. art. VI, § 13, which provides that the "district courts ... shall have power to issue writs of habeas corpus, mandamus, injunction ... and all other writs, remedial or otherwise in the exercise of their jurisdiction." The children's court is a division of the district court, and, as such, comes within the scope of this provision. *See In re Doe.*

The preceding discussion recognizes that the Code acts to regulate the scope of the contempt power, granted to the court under Section 32–1–40(C) for probation violations. The question becomes whether the Code may act to regulate the inherent power of contempt to punish for probation violations. Our supreme court has concluded that the inherent powers of contempt, founded upon the doctrine of separation of powers as enumerated in the New Mexico Constitution, are not absolute. In *State ex rel. Bliss v. Greenwood,* 63 N.M. 156, 162, 315 P.2d 223, 227 (1957), the court concluded that:

The separation of powers between the executive, legislature and judiciary was never intended to be complete. *Ex Parte Grossman,* 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527. This court made this clear in the case of *Ex parte Magee,* 31 N.M. 276, 242 P. 332, 333, when it stated, "Again the proposition that the three departments of the state government are independent of each other is only relatively and not absolutely, true." Even the

strictest inherent power advocates have conceded at least some authority of the legislature to set up restrictions upon the exercise of the contempt power. *Hawkins v. State,* 125 Ind. 570, 25 N.E. 818; *State v. Morrill,* 16 Ark. 384. But, while the legislature may provide rules of procedure which are reasonable regulations of the contempt power it may not, either by enacting procedural rules or by limiting the penalty unduly, substantially impair or destroy the implied power of the court to punish for contempt. As the court stated in *Wyatt v. People,* 17 Colo. 252, 28 P. 961, 964:

" * * * for, though the legislature cannot take away from the courts created by the Constitution the power to punish contempts, reasonable regulations by that body touching the exercise of this power will be regarded as binding."

The practical standard is the reasonableness of the legislative regulation. The statutory regulation must preserve to the court sufficient power to protect itself from indignities and to enable it effectively to administer its judicial functions. The contempt power more than any other distinguishes the court from a mere board of arbitration. *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797.

In regard to CHINS, the directives of the Code establish that: (1) an attempt at rehabilitation, with supervision, is to be favored over immediate confinement; (2) confinement may be ordered only in the limited circumstance where a history of probation violations has been found; (3) confinement cannot exceed ten days in a secure facility; and (4) an attempt at rehabilitation, with supervision, is to be achieved in "a family environment" wherever possible. §§ 32–1–2(C) and –34(F). Under *Bliss,* these directives may act to regulate the inherent power of contempt provided that the court retains sufficient power to protect itself and effectively administer its functions under the Code.

We view Section 32–1–34(F)(3) as a reasonable regulation of the inherent power where probation violations are at issue because (1) it provides courts with the power to incarcerate for repeated violations of their authority, and so protects their dignity; (2) it enables courts to exercise their judicial functions mandated by the Code; and (3) it does not foreclose other punishment for indirect contempts that are not probation violations. Because the penalty of incarceration is not abolished or unduly limited, therefore, the regulation of the inherent contempt power is proper. The court's order, having violated the directive of Section 32–1–34(F)(3), must be reversed.

We express no opinion today as to the proper limits of the court's contempt power for an indirect contempt other than a probation violation, or for a direct contempt of court committed by juveniles under the jurisdiction of the Code. Our holding is limited to probation violations of CHINS.

The court order entered below is reversed as void.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.