729 P.2d 1387

**In the Matter of ANGELA R., a child.**

**STATE of New Mexico, ex rel. DEPARTMENT OF HUMAN SERVICES, Petitioner-Appellant,**

v.

**PATRICK R., Respondent-Appellee.**

**No. 9304.**

Court of Appeals of New Mexico.

Nov. 13, 1986.

John Petoskey, Asst. Gen. Counsel, Human Services Dept., Santa Fe, for petitioner-appellant.

Gary R. Fernandez, Grants, for respondent-appellee.

## OPINION

MINZNER, Judge.

The Human Services Department (HSD) appeals from a judgment entered by the children's court in an abuse and neglect proceeding. The children's court found that HSD had not proved, as alleged in the petition, that Angela R. had been sexually abused by her father. The court also found that the child was in need of therapy, ordered HSD to provide it, and made interim arrangements for custody. The appeal raises two issues: (1) whether the court erred in refusing to admit evidence of the child's statements made to two social workers concerning the alleged sexual abuse; and (2) whether the court exceeded its jurisdiction by ordering therapy, although it found that the child was neither abused nor neglected. Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Romero*, 103 N.M. 532, 710 P.2d 99 (Ct.App.1985). We affirm.

## BACKGROUND.

The three and one-half-year-old girl's parents were divorced. The father had custody, and the mother had liberal visitation. When the father's business took him out of town for a month, he arranged for the mother to care for the child. At the end of the month, the mother told the child that her father would be coming to pick her up. At this point, the child began crying. She initially said that she did not want to go back with her father because he spanked her, and her mother explained that spankings were necessary sometimes. The child then told her mother that the father "made her play with his wee-wee."

Because of this allegation, the child was not returned to the father. The child was taken to a social worker, Pat Dancer, who interviewed the child using anatomically correct dolls. Next, the child was taken to a medical doctor; he found no physical evidence of sexual abuse. The child then was taken to a psychologist, who had no opinion as to whether the alleged abuse had occurred. Finally, the child was taken to another social worker, Georgia Sanchez. The mother was present during Ms. Sanchez's interview with the child. The mother testified that the child told Ms. Sanchez

that her father would sit the child on his lap and make her jump and jump. The child also demonstrated to Ms. Sanchez, with anatomically correct dolls, that her father would put his penis between the child's legs.

The child also saw Dr. Sosa, Dr. Rodriguez, and Dr. Salazar, all clinical psychologists. They related what the child told them her father had done. Drs. Sosa and Rodriguez could not definitely say whether the child had been sexually abused. However, they indicated that a child would be very unlikely to make up a story with so much detail. Dr. Salazar was of the opinion that the father had not abused the child, because the child did not demonstrate any signs of being abused, such as disturbed sleeping or eating patterns, and because the father did not have pedophilic attributes. However, Dr. Salazar agreed with the other doctors that it would be unlikely for a child to have made up such a story.

All doctors testified that the child was in need of therapy because of what had happened to her between the time of the mother's first report of the alleged abuse and the time of trial. The record supports an inference that the investigation itself had caused severe emotional distress.

First, as one doctor put it, the child had been interviewed "to death." This doctor recommends that a child suspected of being sexually abused be interviewed with anatomically correct dolls only once, while being videotaped. Angela R. had been exposed to the dolls and had been requested to explain what happened in excess of three times. By the time the second psychologist gave her the dolls, she pushed them away, expressing that she knew all about these dolls and was not interested in talking about it anymore.

Second, the doctors were concerned that the child felt she was being forced to choose between her parents during the investigation. The child exhibited signs of insecurity. She seemed afraid of losing her parents and felt conflict about what she should say.

In addition to the evidence of the child's statements that the children's court admitted, there was other testimony. The mother testified that the father had played with a daughter of hers by a previous marriage in a manner similar to that related by Angela; he had bounced the older daughter on his lap until he became sexually aroused. At that time, the mother told him to stop and he did stop. The mother also testified that he apologized to her for doing the same thing to Angela. The father denied any abuse. His sister, who ordinarily provided child care for Angela, testified that the child told her nothing had happened.

## CHILD HEARSAY.

The children's court allowed the mother and the psychologists to relate what the child told them. The court exercised its discretion in allowing this testimony in reliance on *State v. Taylor*, 103 N.M. 189, 704 P.2d 443 (Ct.App.1985). The court would not allow the social workers to testify as to what the child told them. HSD claims error in this ruling.

At different points in the transcript, the children's court appeared to give different reasons for its ruling on why the social workers would not be allowed to testify. Sometimes the court appeared to be of the opinion that only parents and medical or psychological experts would be competent to relate the child's statements. At other times, the court appeared to be of the opinion that, because the mother and the psychologists were testifying, any testimony by the social workers would be cumulative.

■ We wish to emphasize that *State v. Taylor* is not limited to parents or medical experts; in appropriate cases, others may be allowed to repeat children's allegations of sexual abuse. We agree with HSD that a social worker's testimony might be particularly significant, because he or she might be the first one to whom an allega-

tion is made. Nevertheless, the children's court had discretion to exclude cumulative testimony. *See State v. Lovato*, 91 N.M. 712, 580 P.2d 138 (Ct.App.1978). The admission or exclusion of evidence rests in the sound discretion of the trial court, and absent a showing of an abuse of discretion, the ruling of the trial court will not be set aside on appeal. *State v. McGhee*, 103 N.M. 100, 703 P.2d 877 (1985); *State v. Worley*, 100 N.M. 720, 676 P.2d 247 (1984).

On appeal, HSD concentrates on the court's refusal to allow Ms. Dancer to relate the child's statements and actions when she first played with the dolls. HSD asserts that Ms. Dancer would have testified as to the details of what the child did with the dolls; they argue that details concerning the movements of the dolls and the movements of the dolls' intimate parts were not otherwise in evidence. We must reject HSD's appellate claim for two reasons.

First, HSD never tendered to the court the actual testimony proffered. In the absence of an actual tender, the children's court was not in a position to intelligently rule, and this court is not in a position to know whether the proffered testimony was cumulative or not. *See State v. Shaw*, 90 N.M. 540, 565 P.2d 1057 (Ct.App.1977); NMSA 1978, Evid.R. 103(a)(2) (Repl.Pamp. 1983). The substance of the evidence must be made known or must be apparent from the context. *Id. See also State ex rel. Conley Lott Nichols Machinery Co. v. Safeco Insurance Co. of America*, 100 N.M. 440, 671 P.2d 1151 (Ct.App.1983) (an offer to prove facts which state conclusions is too general).

Second, there were sufficient details otherwise in evidence. The mother graphically described what the child told her and what the child told Ms. Sanchez. The psychologists were aware of what the child had been told previously and specifically what she told Ms. Dancer. The psychologists indicated that the child's knowledge of and relation of such detail was evidence that the events related actually happened. In the absence of the testimony Ms. Dancer would have offered, we do not know what further details there were or how they could have made HSD's case more persuasive.

Accordingly, we hold that the children's court could properly exclude the testimony of the social workers on grounds of repetitiveness. HSD has not preserved any claim that Ms. Dancer's testimony would not have been repetitive. *See Nichols Corp. v. Bill Stuckman Construction, Inc.*, 105 N.M. 37, 728 P.2d 447 (1986). Under the circumstances of this case, there was no abuse of discretion in excluding the testimony. Because a trial court will be affirmed if it is correct for any reason, *State v. Beachum*, 83 N.M. 526, 494 P.2d 188 (Ct.App.1972), we affirm on this issue.

**ORDER OF THERAPY IN THE ABSENCE OF ADJUDICATION OF NEGLECT OR ABUSE.**

Without finding that the child had been abused by her father, the children's court found that the child was in need of therapy and ordered that HSD provide such therapy. This order followed a colloquy at the conclusion of the hearing during which the court expressed the opinion that the child had been treated like a football in this matter and was emotionally disturbed. When the court expressed its concern over the child's mental health and its desire to have the child evaluated and counselled, HSD stated that it could provide counselors; it never objected to the court's announced intention to order HSD to provide those counselors. HSD proposed a form of judgment that included an order for treatment; the father proposed a conclusion of law that the child required counselling. Notwithstanding the lack of objection, we consider HSD's argument since it raises a jurisdictional question. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983).

For the first time on appeal, HSD contends that the children's court exceeded its jurisdiction under the Children's Code. We disagree.

Our prior cases have held that, because the children's court is a court of limited jurisdiction, *In re Doe, III*, 87 N.M. 170, 531 P.2d 218 (Ct.App.1975), it is only permitted to do what is specifically authorized by the statute. *See id.; Health & Social Services Department v. Doe*, 91 N.M. 675, 579 P.2d 801 (Ct.App.1978). Nevertheless, the Children's Code must be read in its entirety, and sections must be interpreted to correlate as faultlessly as possible. *State v. Doe*, 95 N.M. 88, 619 P.2d 192 (Ct.App.1980).

HSD argues that the applicable statutory authority is NMSA 1978, Section 32–1–31(D) (Repl.1986) on dispositional matters. Prior to 1983, this statute read, in pertinent part:

> The court, after hearing all of the evidence bearing on the *allegations of neglect, abuse, delinquency or need of supervision* shall make and record its findings * * *. If the court finds that the *allegations on the foregoing issues* have not been established, it shall dismiss the petition and order the child released from any detention or legal custody imposed in connection with the proceedings.

*See* 1981 N.M.Laws, ch. 36, § 24 (emphasis added). In 1983, the statute was amended so that the last sentence quoted now reads:

> If the court finds that the *allegations of delinquency* have not been established, it shall dismiss the petition and order the child released from any detention or legal custody imposed in connection with the proceedings. If the finding is that the child is an abused child, the procedural safeguards of Section 32–1–38 NMSA 1978 shall apply with respect to the return of the child to the respondents.

*See* 1983 N.M.Laws, ch. 243, § 1 (emphasis added). Thus, under the old law, if any allegations under the Children's Code were not established, the children's court was required to dismiss the petition and release the child. Under the current law, this is only required for delinquency petitions. The statute is silent as to the power of the court when it finds that the allegations of neglect, abuse, or need of supervision are not established.

We need not decide in this case whether rules of statutory construction, including rules concerning repeal by implication, would allow us to construe the statute to allow the children's court to make dispositions generally concerning children found not to be neglected, abused, or in need of supervision. That is because we consider another provision in the Children's Code and the facts of this case to give the children's court authority to make the disposition it did.

NMSA 1978, Section 32–1–40(A) (Repl. 1986) states:

> When it appears during the course of any proceeding under the Children's Code that some finding or remedy other than or in addition to those indicated by the petition or motion appears from the facts to be appropriate, the court may, either on motion by the children's court attorney or that of counsel for the child, amend the petition or motion, and, provided all necessary parties consent, proceed to hear and determine the additional or other issues, findings or remedies as though originally properly sought.

The facts of this case indicate that the case itself has caused a need for the child to require counselling. No one disputes this. At the conclusion of the hearing, the father asked that the petition against him be dismissed. However, he invited the court to order treatment for the child if the court felt that was necessary. The guardian ad litem appointed for the child agreed that some sort of intervention was required for the child's benefit. We view the record as evidencing HSD's agreement to provide treatment.

On appeal, respondent states:

The Doctors and Trial Court felt that the child was having problems from the months of testing and inquiring into this case. The Appellee agreed and has gotten help for his daughter. * * *

The Trial Court probably has the inherient [sic] power to make findings regarding the child's mental condition as a result of the long investigation and testing in this case and order such treatment.

In *In re Doe*, 99 N.M. 517, 660 P.2d 607 (Ct.App.1983), we said that the children's court has broad and inherent powers to accomplish the results contemplated by the Children's Code and to attain a correct resolution of the issues presented. Considering the broad and inherent powers of the children's court, and under the facts herein, we find the court did not act in excess of its statutory authority. *Cf. State v. Julia S.*, 104 N.M. 222, 719 P.2d 449 (Ct.App. 1986) (children's court's inherent power to punish for contempt limited by Children's Code). Because Section 32–1–40 allows the children's court to alter the remedies when the facts warrant such relief and when all parties consent, and because that happened in this case, we hold that the children's court had statutory authority to enter the order it did. *See also* NMSA 1978, § 32–1–31(H) (Repl.1986).

The judgment below expressly stated that the children's court "will retain jurisdiction in this matter." Under the Code, the court's jurisdiction is retained until terminated by court order. NMSA 1978, § 32–1–12 (Repl.1986). Because the court had statutory authority to enter its order, and because its jurisdiction under the Code had not terminated, we affirm as to this issue also.

**CONCLUSION.**

Finding no error, the children's court is affirmed as to both issues.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.