In the Interest of J.E.S.,
Child–Appellant,

and Concerning E.S. and D.S.,
Respondent Parents.

Upon the Petition of SCHOOL DISTRICT NO. 11, by Jake GARCIA, an Attendance Officer thereof, Petitioner–Appellee.

No. 90SA357.

Supreme Court of Colorado,
En Banc.

Sept. 16, 1991.

J. Steven Butler, Colorado Springs, for child-appellant.

Lawrence F. Peek, Colorado Springs, Guardian Ad Litem, for child-appellant.

Anderson, Johnson & Gianunzio, Wm. Kelly Dude, M. Cole Emmons, Colorado Springs, Nancy H. Westmoreland, Clarksburg, W.Va., for petitioner-appellee.

Shari F. Shink, Denver, for amicus curiae, Children's Legal Clinic.

Hilary Holland, Westminster, David Miller, Denver, for amicus curiae, American Civil Liberties Union of Colorado, Inc.

Mary Pat Ellis, Karowsky, Witwer & Oldenburg, Marilyn J. David, Greeley, for amicus curiae, School Dist. No. 6, Weld County, Colo.

Miller & Delay, P.C., John W. Groves, Grand Junction, for amici curiae, School Districts Northglenn–Thornton No. 12, Fort Lupton RE–8, Brighton 27–J, and Elizabeth C–1.

Douglas McKay Kerr, Denver, pro se, amicus curiae.

Justice VOLLACK delivered the Opinion of the Court.

Child-appellant J.E.S. appeals the district court's ruling that the 1990 amendment to section 22–33–108(7), 9 C.R.S. (1990 Supp.), of the School Attendance Law of 1963, which precludes a court from incarcerating a child for contempt of a court order to attend school, is unconstitutional. We affirm.[1]

---

1. Section 13–4–102(1)(b), 6A C.R.S. (1987), gives this court jurisdiction over appeals when the constitutionality of a statute is at issue.

## I.

On January 10, 1989, the attendance officer of School District No. 11 petitioned the Juvenile Division of the El Paso County District Court for an order to compel the then thirteen-year-old J.E.S. to attend school in accordance with the compulsory School Attendance Law of 1963, §§ 22–33–101 to –110, 9 C.R.S. (1988 & 1990 Supp.).[2] Following a hearing on February 7, 1989, the district court, upon finding that J.E.S. was under sixteen years of age and had failed to attend school as required by Colorado's compulsory school attendance law, ordered J.E.S. to attend school on a regular basis. The court further advised J.E.S. that the court could find him in contempt of court if he neglected or refused to obey the order.

On May 9, 1990, J.E.S. appeared before the court on a contempt citation for his failure to obey the court's order of February 7 to attend school regularly. The court found J.E.S. in contempt and, in accordance with the amended section 22–33–108(7), ordered J.E.S. to perform ten hours of community service. On May 31, 1990, J.E.S. reported to the court that he had completed the ten hours of community service, but the court also heard evidence from J.E.S.'s guardian *ad litem* and the school district that J.E.S. had continued his truant behavior since the May 9 contempt hearing. When the court asked J.E.S. why he did not attend school as ordered, J.E.S. replied, "I'm lazy. I don't want to." The court then reordered J.E.S. to attend school and ordered him to obtain a doctor's excuse for all future absences. An appearance review of the matter was set for June 7, 1990.

On June 7, J.E.S. appeared before the court and was served with a second contempt citation for failing to attend school regularly since the first contempt hearing on May 9. After J.E.S. voluntarily confessed the contempt citation, the court sanctioned J.E.S. by requiring him to attend summer school.

On August 2, 1990, J.E.S. was again brought before the court on a third contempt citation. The undisputed testimony at the contested hearing revealed that J.E.S. had not attended summer school as ordered, nor had he made any effort to enroll. At the conclusion of the hearing, the court found that J.E.S. had failed beyond a reasonable doubt to comply with the court's order of June 7 to attend summer school. Thereafter, the court concluded that the 1990 amendment of section 22–33–108(7) precluding the court from sentencing J.E.S. to a detention center for contempt of a court order was unconstitutional and subsequently sentenced J.E.S. to forty-five days in Zebulon Pike Detention Center, instructing that twenty days be served immediately and twenty-five days be suspended. The district court denied J.E.S.'s request for a stay of execution of his sentence pending the appeal of the court's ruling. J.E.S. was incarcerated at the detention center until this court stayed the execution of J.E.S.'s sentence on August 24, 1990.

## II.

The issue we must determine on appeal is whether the amended section 22–33–108(7), 9 C.R.S. (1990 Supp.), which precludes a court from incarcerating a child in a secure facility as a sanction for contempt in a compulsory school attendance case, violates the separation of powers doctrine of the Colorado Constitution by impermissibly abrogating the judiciary's power to incarcerate juveniles for contempt of court orders.

## A.

To place section 22–33–108(7) in context, we first will review the relevant provisions of the School Attendance Law of 1963, §§ 22–33–101 to –110, 9 C.R.S. (1988 & 1990 Supp.). As previously mentioned, the school attendance law mandates regular

---

**2.** Section 22–33–104(1) sets forth the compulsory school attendance requirement as follows:

Every child who has attained the age of seven years and is under the age of sixteen years, except as provided by this section, shall attend public school for at least one thousand fifty-six hours if a secondary school pupil or nine hundred sixty-eight hours if an elementary school pupil during each school year[.]

school attendance for all children who have reached the age of seven years and who are under sixteen years old. § 22–33–104(1). Responsibility for the enforcement of the compulsory school attendance requirement rests with the attendance officer for each school district. "It is the attendance officer's duty in appropriate cases to counsel with students and parents and investigate the causes of nonattendance and report to the local board of education so as to enforce the provisions of this article which relate to compulsory attendance." § 22–33–107(1).

Section 22–33–108 outlines the nature of judicial proceedings initiated to compel enforcement of the compulsory school attendance law. Section 22–33–108(1) assigns original jurisdiction over truancy cases to those courts with jurisdiction over juvenile matters.[3] Subsection (4) makes it the duty of the attorney for the school district, the attendance officer, or the local board of education to initiate court proceedings for the enforcement of the compulsory attendance provisions when appropriate. Subsection (5) instructs that "[c]ourt proceedings shall be initiated to compel compliance with the compulsory attendance statute after the parent and the child have been given written notice by the attendance officer ... that proceedings will be initiated if the child does not comply with the provisions of [the school attendance law]." § 22–33–108(5). Under subsection (6), a court presiding over a truancy matter may in its discretion issue an order compelling the truant child to attend school.

Section 22–33–108(7), the provision at issue, addresses the consequences of a truant child's failure to comply with a court order to attend school. Prior to its amendment in 1990, subsection (7) read:

> If the child does not comply with the court order, the court may order that an investigation be conducted as provided in section [19–2–301(2) ], C.R.S.,[4] and the court may order the child to show cause why he should not be held in contempt of court. The court may include as a sanction after a finding of contempt an appropriate treatment plan which may include, but not be limited to, community service to be performed by the child, supervised activities, and other activities having goals which shall ensure that the child has an opportunity to obtain a quality education.

Effective April 20, 1990, the language that is the subject of the present controversy was added. It states:

> The court may not impose any sanction of incarceration to a jail, lockup, other place used for the confinement of adult offenders, or any juvenile detention facility operated by or under contract with the department of institutions.

Ch. 137, sec. 7, § 22–33–108(7), 1990 Colo. Sess.Laws 1016, 1019. The district court concluded that, as amended, section 22–33–108(7) was an unconstitutional legislative abrogation of the judiciary's inherent contempt power. We agree.

**B.**

Article III of the Colorado Constitution divides the powers of state government into three distinct, co-equal branches—the legislative, executive and judicial—and directs that "no person or collection of persons charged with the exercise of powers

---

**3.** The Children's Code, § 19–1–104(1)(k), 8B C.R.S. (1990 Supp.), also gives juvenile courts exclusive original jurisdiction over proceedings "concerning a petition filed pursuant to the 'School Attendance Law of 1963', article 33 of title 22, C.R.S."

**4.** Prior to the repeal and reenactment of the Children's Code in 1987, this provision appeared in § 19–3–101(2), 8B C.R.S. (1986). In its present form, § 19–2–301, 8B C.R.S. (1990 Supp.), provides:

> **Preliminary investigation.** (1) Whenever it appears to a law enforcement officer or any

other person that a child is or appears to be within the court's jurisdiction, as provided in section 19–2–102, the law enforcement officer or other person may refer the matter conferring or appearing to confer jurisdiction to the district attorney, who shall determine whether the interests of the child or of the community require that further action be taken.

> (2) Upon the request of the district attorney, the matter may be referred to any agency designated by the court for an investigation and recommendation.

properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted." In *Smith v. Miller*, 153 Colo. 35, 384 P.2d 738 (1963), we adopted the following language by the trial court on the separation of powers:

"It is an ingrained principle in our government that the three departments of government are coordinate and shall co-operate with and complement, and at the same time act as checks and balances against one another but shall not interfere with or encroach on the authority or within the province of the other.... The judiciary has its exclusive powers and functions, to-wit: it has judgment and the power to enforce its judgments and orders. In their responsibilities and duties, the courts must have complete independence.... [I]t is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source. It is abhorrent to the principles of our legal system and to our form of government that courts, being a coordinate department of government, should be compelled to depend upon the vagaries of an extrinsic will. Such would interfere with the operation of the courts, impinge upon their power and thwart the effective administration of justice."

*Id.* at 40–41, 384 P.2d at 741. In *Peña v. District Court*, 681 P.2d 953 (Colo.1984), we defined the inherent powers of the judiciary as

"[a]ll powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists; the court *is*, therefore it has the powers reasonably required to act as an efficient court."

*Id.* at 956 (quoting Carrigan, *Inherent Powers and Finance*, Trial Nov.–Dec. 1971, at 22 (emphasis in original)).[5]

Contemnors who disregard the authority of the judiciary by refusing to obey valid court orders impair the efficient operation of the courts in fulfilling their judicial duties. Punishment for contemptuous conduct by fine or imprisonment, *see* C.R.C.P. 107(d), "is designed to vindicate the dignity and authority of a court when its orders have been flouted," *P.R. v. District Court*, 637 P.2d 346, 350 (Colo.1981), and is thus meant to safeguard "the *administration* of the law, a function residing in the courts, rather than the operation of the law." *People ex rel. Attorney Gen. v. Jersin*, 101 Colo. 406, 411, 74 P.2d 668, 670 (1937) (emphasis in original).

The judiciary's authority to punish for contempt of court has long been recognized as an inherent power essential to the effective administration of justice. *See, e.g., Michaelson v. United States ex rel. Chicago*, 266 U.S. 42, 65, 45 S.Ct. 18, 19–20, 69 L.Ed. 162 (1924) ("That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice."); *Austin v. City and County of Denver*, 156 Colo. 180, 184, 397 P.2d 743, 745 (1964) ("Intrinsic in tribunals following the common law ... is the right to protect themselves against insults and indignities, interference with the administration of justice, and disobedience of their orders."); *Wyatt v. People*, 17 Colo. 252, 259, 28 P. 961, 963 (1892) ("The power to punish contempts is universally recognized as inherent" in all courts and "essential to the performance of the very functions for which courts are created."); *Hughes v. People*, 5 Colo. 436, 446 (1880) ("the power to punish for contempt is an incident to all courts of justice" and "is

---

5. *Black's Law Dictionary* 782 (6th ed. 1990) defines "inherent power" as "[a]n authority possessed without its being derived from another. A right, ability, or faculty of doing a thing, without receiving that right, ability, or faculty from another."

The "inherent power of a court" is defined as "that which is necessary for the proper and complete administration of justice and such power is resident in all courts of superior jurisdiction and essential to their existence; *e.g.*, sentencing and contempt powers." *Id.*

essential to the effective administration of law").

■ The inherent and indispensable nature of the courts' right to punish contemptuous conduct necessarily shields this judicial power from legislative control under the separation of powers doctrine. *See Hughes*, 5 Colo. at 446 (the courts' inherent contempt power "is not derived from the legislature, and cannot be made to depend upon the legislative will"); *Austin*, 156 Colo. at 184, 397 P.2d at 745 (same). As this court stated in *Guiraud v. Nevada Canal Co.*, 79 Colo. 289, 245 P. 485 (1926):

> The district courts of this state are constitutional tribunals vested with jurisdiction as to all matters of law and equity. As such they have the inherent plenary power to protect and enforce their orders and to punish as for contempt violations thereof. *The legislative branch of the government may not divest them of such power or by regulation seriously interfere with the courts in the exercise of such jurisdiction. It may provide reasonable regulations as to the procedure to be observed....*

*Id.* at 292, 245 P. at 486 (emphasis added). *See also Michaelson*, 266 U.S. at 65, 45 S.Ct. at 19–20; *Wyatt*, 17 Colo. at 261, 28 P. at 964. Thus, while the legislature may reasonably regulate the procedures the judiciary employs when exercising the contempt power, it may not unduly limit the sanctions for contemptuous conduct so as to seriously impair or destroy the courts' contempt power. *State ex rel. Bliss v. Greenwood*, 63 N.M. 156, 162, 315 P.2d 223, 227 (1957). "The practical standard is the reasonableness of the legislative regulation. The statutory regulation must preserve to the court sufficient power to protect itself from indignities and to enable it effectively to administer its judicial functions." *Id.*

J.E.S. argues that section 22–33–108(7)'s prohibition against incarceration is a reasonable legislative regulation of the courts' contempt power, and not an abrogation of this power, because the court may still impose sanctions other than incarceration for disobeying a court order to attend school. Contrary to J.E.S.'s contention, we believe that by prohibiting courts from incarcerating juveniles who repeatedly act in contempt of a court order, the amended section 22–33–108(7) unreasonably limits the courts' inherent contempt power in violation of the separation of powers doctrine. *See* Colo.Const. art. III.

Of those states that have confronted the problem of status offenders [6] who disobey court orders, most have affirmed the courts' inherent right to order the secure detention of contemptuous status offenders despite a legislative ban or expression of legislative intent against such detention. *See In re Michael G.*, 44 Cal.3d 283, 747 P.2d 1152, 243 Cal.Rptr. 224 (1988); *In re G.B.*, 88 Ill.2d 36, 58 Ill.Dec. 845, 430 N.E.2d 1096 (1981); *State ex rel. L.E.A. v. Hammergren*, 294 N.W.2d 705 (Minn.1980); *In the Interest of Darlene C.*, 278 S.C. 664, 301 S.E.2d 136 (1983); *In the Interest of D.L.D.*, 110 Wis.2d 168, 327 N.W.2d 682 (1983).[7] Those cases holding otherwise are distinguishable in that they disapproved in particular of a practice not employed in the case before us, and that is the practice of bootstrapping where a child is adjudicated a delinquent for contemptuous conduct and then the child's delinquency status is used to justify secure detention. *See In re Ronald S.*, 69 Cal.App.3d 866, 138 Cal.Rptr. 387 (1977); *W.M. v. State*, 437 N.E.2d 1028 (Ind.App.1982); *In the Interest of Tasseing H.*, 281 Pa.Super. 400, 422 A.2d 530 (1980).

The Supreme Court of Wisconsin made the following statement, with which we agree:

**6.** Status offenders are youths who commit acts, such as running away and truancy, that would not constitute a criminal offense if committed by an adult, but that nevertheless subject youths to the jurisdiction of the juvenile court.

**7.** Although these states have expressed a general legislative intent against the detention of status offenders, the statutes reviewed were silent on the incarceration of contemptuous status offenders. For reasons discussed in the text we do not view such statutory silence as critical to the issue of separation of powers.

Where a court is granted jurisdiction over subject matters, it is implicit in that grant of jurisdiction that a court can use the contempt power to effectively carry out the functions ordered by the legislature.... Once jurisdiction has been granted to a court, it must have the requisite power to enforce its orders. Indeed, it is the court's duty to insure that its orders are obeyed by invoking the appropriate remedial sanctions.... Courts may not be placed in a situation where authority is lacking to enforce their orders.

*D.L.D.*, 110 Wis.2d at 180–81, 327 N.W.2d at 688–89. The necessity of the judiciary's ultimate power to incarcerate for contempt was also emphasized in *In re Ronald S.*, 69 Cal.App.3d 866, 138 Cal.Rptr. 387 (1977), despite the court's holding that status offenders could not be detained in secure institutions under California law:

The Legislature has determined that [status offenders] shall not be detained in or committed to secure institutions even if this makes juvenile court judges look ridiculous.... It appears to us that the Legislature must make a clear-cut decision in this field.... If the juvenile court is to be saddled with the responsibility for [status offenders], it must also be afforded the tools and authorities to handle those cases. Courts must have coercive authority or they cease being courts.... It is simply not fair to a juvenile court judge to whom the community looks for help to so restrict him that he cannot put his orders or decisions into effect. Certainly not all [status offenders] need to be placed in secure facilities. However, some do and in these cases the juvenile court judge must have the authority to detain in a secure facility—if [status offenders] are to remain in the juvenile court.

*Id.* at 873–75, 138 Cal.Rptr. at 392–93.

In *State v. Julia S.*, 104 N.M. 222, 719 P.2d 449 (N.M.App.1986), the court ad-

dressed whether a legislative regulation concerning incarceration of contemptuous status offenders was a reasonable restriction of the courts' inherent contempt power. Specifically, the Children's Code provision in question precluded the incarceration of a status offender until the child had violated conditions of probation for the third time. The court ruled that the legislative regulation of the courts' inherent contempt power was reasonable *"[b]ecause the penalty of incarceration [was] not abolished or unduly limited." Id.* at 228, 719 P.2d at 455 (emphasis added).

In contrast, by prohibiting "any sanction of incarceration to a jail, lockup, other place used for the confinement of adult offenders, or any juvenile detention facility operated by or under contract with the department of institutions," the Colorado General Assembly's enactment of section 22–33–108(7), 9 C.R.S. (1990 Supp.), effectively abolished incarceration as an available punishment for contemptuous truants since no other type of secure facility presently exists. J.E.S. argues that removing incarceration as an alternative was a reasonable restriction on the juvenile courts' contempt power because lesser sanctions such as community service remained viable options. We agree with the School District, however, that it is the threat of incarceration that allows the lesser sanctions to work. *See* Logan & Rausch, *Why Deinstitutionalizing Status Offenders is Pointless*, 31 Crime & Delinq. 501, 512 (1985) ("If coercive confinement is ruled out as a possible response, the court loses its ability to impose other dispositions in a compulsory fashion.")

In our view, the legislature's enactment of the amended section 22–33–108(7) has so deprived those courts having jurisdiction over truants of their inherent contempt power as to render them unable to preserve the dignity of the court and to administer their judicial functions in an effective manner.[8] If responsibility for the enforcement

8. Judge Toth of the El Paso County District Court aptly expressed the frustration of being denied the ability to enforce the court's orders when he said: "For, what is the Court to do upon continued failure by a juvenile to participate in a court ordered treatment plan? Order more community service as the juvenile noncha-

of compulsory school attendance is to remain in the courts, the judiciary's power to enforce its orders must remain intact. We therefore hold that the legislature's amendment to section 22-33-108(7) usurps the courts' inherent contempt power so as to violate the separation of powers doctrine preserved by article III of the Colorado Constitution.

Judgment affirmed.

lantly exits the courtroom smirking from ear to     ear?"